[Civ. No. 8882. Fourth Dist., Div. One. Oct. 18, 1968.]

MARSHALL W. SMITH, Plaintiff and Appellant, v. COUNTY ENGINEER OF SAN DIEGO COUNTY et al., Defendants and Respondents.

Goss & Vining, Donn H. Goss and Adrian D. Vining for Plaintiff and Appellant.

Bertram McLees, Jr., County Counsel, and Robert G. Berrey, Assistant County Counsel, for Defendants and Respondents.

LAZAR, J. pro tem.*—This case arises by appeal from a judgment denying a writ of mandate sought to compel reinstatement after appellant's dismissal from employment by the County of San Diego.[1]

## FACTS

On July 12, 1965 (presumably under county civil service certification), by appointment by respondent county engineer, appellant commenced work as a Draftsman II in the San Diego County Engineering Department. The same date appel-

---

*Assigned by the Chairman of the Judicial Council.

[1] By petition for writ of mandate in the superior court appellant sought a peremptory writ commanding ''respondent'' to set aside ''its disciplinary order against'' appellant. We point out that the respondents are two in number, the County Engineer of San Diego and the Civil Service Commission of San Diego County, and use of the singular tends to produce uncertainty and ambiguity. For the purposes of this opinion we treat the prayer of the petition as if it asked for a writ setting aside the findings and decision of the respondent Civil Service Commission and ordering respondent county engineer to reinstate appellant as a county employee in his department.

lant was directed to take and sign the oath required of all public employees by the state Constitution, article XX, section 3. The circumstances require consideration of only that portion of the section which reads:

"Members of the Legislature, and all public officers and employees, executive, legislative, and judicial, except such inferior officers and employees as may be by law exempted, shall, before they enter upon the duties of their respective offices, take and subscribe the following oath or affirmation:

" 'I, ————, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California; that I take this obligation freely, without any mental reservation or purpose of evasion; and that I will well and faithfully discharge the duties upon which I am about to enter.'

" . . . . . . . . . . .

"And no other oath, declaration, or test, shall be required as a qualification for any public office or employment.

" 'Public officer and employee' includes every officer and employee of the State, including the University of California, every county, city, city and county, district, and authority, including any department, division, bureau, board, commission, agency, or instrumentality of any of the foregoing."

Appellant purported to take and sign the oath, which was submitted to him in printed form, but struck out the words "the Constitution of" as follows:

" 'I, _____, do solemnly swear (or affirm) that I will support and defend the Constitution of the United States and the Constitution of the State of California against all enemies, foreign and domestic; that I will bear true faith and allegiance to the Constitution of the United States and the Constitution of the State of California . . .' "

The oath as altered was placed among the county records; appellant did not call attention to the alterations made by him; no evidence was produced to show notice of the alterations by any county personnel at the time the oath was received; respondent county engineer and the county auditor testified they knew nothing of the alterations until the circumstances developed which are hereinafter stated.

The alteration of the oath executed July 12, 1965, was ascertained when appellant was asked, in January 1967, to

execute a duplicate constitutional oath for the convenience of the county auditor and controller in adapting county records to a system of electronic data processing. On this second occasion appellant struck out the words "the constitution of" whenever they appeared in the first paragraph of the prepared form of oath. The alterations were noted which led to examination of the July 12, 1965, oath and knowledge of its alteration.

During January 1967 appellant was requested to execute an unaltered form of oath, which he refused to do unless he could append a statement reading:

"In taking this oath I make no mental reservation. I am a member of the Reformed Presbyterian Church of North America, and I declare that I owe a supreme allegiance to the Lord Jesus Christ, and in making that declaration I take the same God as my witness invoking His assistance to help me to render due obedience to my Country in all temporal matters.

"And I do further declare that I do not now know any matter in which I intend actual disobedience to any command of my country now known to me."

Such proposal was refused by respondent county engineer, the appointing authority.

On January 31, 1967, appellant was again asked to execute the unaltered form of oath. On that date he was willing so to do provided he could append to it a statement reading:

"I take this oath, pledging my loyalty and allegiance to my country, but declaring my supreme allegiance to the Lord Jesus Christ Whom Almighty God has appointed ruler of Nations, and expressing my dissent from the failure of the Constitution to recognize Christ and to acknowledge the' Divine institution of civil government."

Respondent county engineer refused appellant's offer and delivered to him this notice:

"This is to notify you that you are hereby removed and dismissed from your position of *Draftsman II* in the classified service of the County of San Diego effective at the close of business this *31st* day of *January,* 1967, for the reason that you have failed and refused to execute the form of oath or affirmation required by Section 3 of Article XX of the Constitution of the State of California and Sections 3102 and 3103 of the Government Code of the State of California." signed by respondent as such county engineer.

Appellant thereupon instituted the procedures required for a hearing upon the effectiveness of the January 31, 1967

notice. Such hearing was held February 21, 1967, resulting in a decision upholding the termination of appellant's employment by the county. Appellant's alteration and proposed supplementation of an unaltered oath were dictated and required by his membership in and adherence to the doctrines of the Reformed Presbyterian Church of North America and his personal religious beliefs.

The facts recited above are established by stipulation of the parties or by the findings of the respondent Civil Service Commission. No dispute appears with respect to those facts and the only issues which are presented to us involve questions of law. Under the circumstances we apprehend that our responsibility is to treat the nominal appeal before us as in fact a further application for writ of mandate rather than a review of a trial court judgment. We are bound by the standards set forth in Code of Civil Procedure, section 1094.5 as was the superior court, i.e., of testing the findings of fact by the substantial evidence rule and of determining whether error of law occurred in ruling upon the facts supported by substantial evidence. (See *Stewart* v. *State Personnel Board*, 250 Cal.App.2d 445, 448 [58 Cal.Rptr. 280].) As we have stated there is no conflict with respect to the facts and the problem to be resolved is the proper legal result of those facts. We endeavor to discuss in logical sequence the questions pertaining to that problem.

■ DID THE COUNTY OF SAN DIEGO LEGALLY EMPLOY APPELLANT ON JULY 12, 1965?

No. Appellant became a *de facto* employee of the county. (See *Oakland Paving Co.* v. *Donovan*, 19 Cal.App. 488, 493-496 [126 P. 388]; *People* v. *Kempley*, 205 Cal. 441, 445. [271 P. 478]; *Lopez* v. *Payne*, 51 Cal.App. 447 [196 P. 919]; gen. 41 Cal.Jur.2d, Public Officers, § 227 et seq.); he did not become a de jure employee of the county for failure to execute the oath required by the state Constitution.

The requirements of the Constitution insofar as they relate to this case have heretofore been quoted.

Our attention has not been called to any case directly touching upon the meaning and effect of that portion of the complete oath with which we are concerned. The most recent case in this state which examined section 3 was *Vogel* v. *County of Los Angeles*, 68 Cal.2d 18 [64 Cal.Rptr. 409, 434 P.2d 961], in which that portion of the oath having to do with membership in organizations advocating overthrow of the state and federal governments by force and violence was

declared unconstitutional under the federal Constitution. The case does not discuss the portion of the oath with which we are here concerned. We agree with the suggestion of counsel for respondents that that portion of the oath may be deemed severable and, thus, the portion under consideration by us to be unaffected by *Vogel*. No contrary position is stated by appellant.

There is in *Vogel,* however, language worthy of repetition at this point. We are reminded: ''It is now well settled that, although an individual can claim no constitutional right to obtain public employment or receive any other publicly conferred benefit, the government may not condition public employment or receipt of such benefit upon any terms that it may choose to impose, and that the power of government to withhold benefits from its citizens does not encompass a 'lesser' power to grant such benefits upon an arbitrary deprivation of constitutional rights. [Citations.]

''When the government seeks to require a limitation of constitutional rights as a condition of public employment, it bears the heavy burden of demonstrating the practical necessity for the limitation. The conditions annexed to the publicly conferred benefit must reasonably tend to further the purposes of the government in granting the benefit, and the utility of imposing the conditions must manifestly outweigh the impairment of constitutional rights. [Citations.]

''Even where a compelling state purpose is present, restrictions on the cherished freedom of association protected by the First Amendment and made applicable to the states by the Fourteenth Amendment must be drawn with narrow specificity. First Amendment freedoms are delicate and vulnerable and must be protected wherever possible. When government seeks to limit those freedoms on the basis of legitimate and substantial governmental purposes, such as eliminating subversives from the public service, those purposes cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. Precision of regulation is required so that the exercise of our most precious freedoms will not be unduly curtailed except to the extent necessitated by the legitimate governmental objective. [Citations.]'' (*Vogel* v. *County of Los Angeles,* 68 Cal.2d 18, 21-22 [64 Cal.Rptr. 409, 434 P.2d 961].)

This does not diminish, however, the long recognized right of government to assure itself of the substantial loyalty of those whose services are required to give effect to its purposes.

In *Cohen* v. *Wright,* 22 Cal. 293, the Supreme Court said of the constitutional oath, as it then read: "All civilized Governments require their officers to take what, by other nations, is termed the oath of allegiance, by which the party swears to bear true faith and allegiance to the reigning sovereign; but as our highest public officers, State and National, are not vested with the right of sovereignty, it was necessary to change the *form* of the oath, and thus the officer is required, by both the National and State Constitutions, to swear to support the Constitution—the Constitution being used as the representative of the sovereign power. But the true spirit, intent, and meaning of the constitutional oath is to bear true faith and allegiance to the National and State Governments. It certainly was not the intention that the officer should merely swear to support the parchment on which the Constitution was written, or the paper on which it might be printed, but to support the Government organized by that instrument. Nor in thus taking the oath to support the Government does the officer swear allegiance to the individuals who administer it. It is fidelity to the Government that was organized by the Constitution, that has existed ever since, and is intended to exist through all coming time, as administered by the official agents of the people, that is required." (*Cohen* v. *Wright,* 22 Cal. 293, 308-309.)

We deem a fair understanding of the rule that "conditions annexed to the publicly conferred benefit must reasonably tend to further the purposes of the government in granting the benefit, and the utility of imposing the condition must manifestly outweigh the impairment of constitutional rights," to be that an avowal of good faith willingness to support the government in its purposes as prescribed by the organic law is not proscribed by the corollary principle that optimum recognition is to be given individual freedoms guaranteed by that organic law. No extended analysis is necessary to establish that individual freedoms and orderly social adhesion can exist concurrently only in an environment of compatibility—not of supremacy by the one or the other. To say otherwise would be to recognize the rule of the ridiculous over the rule of reason. Reason and experience teach us that improvement in any institution is brought about in the final analysis by those who believe in the institution and if the ideals and purposes of constitutional government are to be maintained and furthered it will be the result in good part of the efforts of personnel who are willing to support those ideals

and purposes. The promissory oath found in the first paragraph of the constitutional oath goes to this point in clear and direct statement.

We have quoted above from *Cohen* v. *Wright, supra,* 22 Cal. 293, 308-309, and we do not take issue with that language. We would expand it, however, in view of the attention given since then and most recently to questions of constitutional law in relation to individual freedom, to say that the oath is a commitment to the sovereign power of our national and state governments as they exist under organic law—the respective Constitutions. The Constitutions do not speak in terms of absolutes, except as of the moment. Each provides for its own amendment and always has. The most that the constitutional oath says is that the oath taken recognizes the constitutional form of government under which the national and state bodies politic and the oath-taker as an individual, live, that he is willing to exert his efforts to continue it as the political system for the government of the country and the state and to act against the erosion or destruction of that system, subject nevertheless to the fact, in the extreme, that the Constitutions carry within themselves the mechanics of their own destruction through the process of amendment.

We consider it appropriate to borrow from *Steiner* v. *Darby,* 88 Cal.App.2d 481 [199 P.2d 429], language appearing at pages 490-491, which we have adapted as indicated by parentheses: "[P]laintiffs, as public servants, have the implied duty to support the form of government lawfully chosen by the people whom they are employed to represent, and that they impliedly agreed, when they accepted public employment to act as representatives of the people and not to advocate destruction of the government [unlawfully]. By accepting public employment they forego any privilege they may have had as private citizens to advocate the overthrow of the government [unlawfully]. It is inconceivable that they should be permitted to represent the people, be supported by the people, and at the same time have the privilege of advocating [unlawfully] the overthrow of the very government by which they are employed and obtain their livelihood. If they cannot subscribe to the prescribed [oath] they may join those who serve themselves in the ranks of private employment.

"There is nothing in the foregoing rule which in the slightest degree affects the plaintiffs' rights of political belief or religious belief. . . . There is nothing in the oath which requires plaintiffs to surrender any constitutional right. . . .

It needs no argument to support the thesis that a [public employer] need not wait until after an employee has committed some overt act before making inquiry [as to his state of mind vis-a-vis such an employer and the rules under which it operates.]. . . . A servant employed by the people is held to [a high standard], and his employer, the people, not only may, but it is their duty through their authorized representatives to make proper inquiry as to his fitness for the position which he occupies and as to his intentions and acts relative to his loyalty to the people.'' When we consider the travail with which this nation was born, the labor, sacrifice and heartache which have nurtured it, and the ideals and aspirations both express and implicit in its organic framework, we state as a valid premise that the people attach to the legal structure upon which their political organization has been built a value worthy of protection and perpetuation. Such a view is neither autocratic nor dictatorial; it is not a denigration of the individual and his rights; it is a realistic awareness and acceptance of the proposition that the rule of political and social life must be the rule of law. Constitutional freedoms were not acknowledged nor have they since been protected for the purpose of making them obstructions to the logical and reasonable functions of constitutional government.

Given the basic purpose of the oath it follows in reason that the requirement of execution of the oath ''before'' entering upon the duties to be undertaken establishes the execution of the oath as a condition precedent to a lawful undertaking of those duties. It becomes, in a sense, a matter of eligibility, for one who cannot take the oath, in effect, is rendered ineligible for public employment. (Cf. *Reed* v. *Hammond,* 18 Cal.App. 442 [123 P. 346]; *Searcy* v. *Grow,* 15 Cal. 117.) While the employment which is the subject of this appeal is undoubtedly not a ''public office'' as contemplated by Government Code, section 1303 (*Hirschman* v. *County of Los Angeles,* 39 Cal.2d 698 [249 P.2d 287, 250 P.2d 145]), nevertheless the importance of the oath of office as a prerequisite in the eyes of the Legislature is indicated by its action in declaring the exercise of the function of a public office before taking the oath of office to be a misdemeanor. The constitutional provision does not impose a criminal penalty in such case but, also, it makes no distinction in the necessity of the oath as between ''public officers and employees.'' The execution of the oath is essential to the status of *de jure* employment the lack of which precludes the right to compensation for services rendered (cf.

*Lopez* v. *Payne,* 51 Cal.App. 447, 449 [196 P. 919]; *Norton* v. *Lewis,* 34 Cal.App. 621, 624 [168 P. 388]). Appellant concedes that the oath as taken and subscribed by him at the time he entered upon the work of the position to which he had been appointed was an ineffective oath. We hold that appellant did not become a lawful employee of respondent county.

 WAS APPELLANT ENTITLED TO TAKE THE OATH OF OFFICE IN JANUARY 1967?

No. Appellant contends that he was entitled to take and sign a valid form of the constitutional oath in January of 1967 when the deficient oath was discovered. The reasoning is that the position to which he was abortively appointed was still vacant; that it is the expressed legislative policy that technical deficiencies in the oath may be corrected; that no time within which a valid oath must be signed is expressed anywhere in the law with respect to the particular position for which he sought to qualify; therefore the status of both appellant and of the job should be considered the same as it was when respondent county engineer designated appellant the appointee in July 1965. Appellant further contends that his offer of January 31, 1967, to take and subscribe the unaltered oath to be accompanied in filing with the addendum heretofore quoted should have been accepted as a valid qualification for the still vacant position.

We are unable to agree with either contention.

More frequently in earlier days than in recent there have been numerous situations in which the courts of this state have had to consider whether there has been adequate compliance with the requirements necessary to assume a position to which there has been election or appointment. When called upon to construe laws requiring execution of the oath and filing of a bond within a certain period of time the California courts have held them to be mandatory (see *Norton* v. *Lewis,* *supra,* 34 Cal.App. 621; *People* v. *Perkins,* 85 Cal. 509, 511 [26 P. 245]; *Hill* v. *New Amsterdam Casualty Co.,* 105 Cal. App. 156, 158-159 [286 P. 1103, 158 A.L.R. 639]). We have not been referred to any provision of the law either by way of the county charter or otherwise which specifies the period of time within which a certified civil service candidate must qualify or the effect of such a failure by such a candidate upon the position to which he was certified. It would seem elementary, however, that in any event qualification should occur within a reasonable time and failing such qualification the civil service procedures should be invoked for the certifica-

tion of a different candidate. (Cf. *Brodie* v. *Campbell*, 17 Cal. 11.) We think appellant can be in no different position simply because the failure to qualify, brought about by his own conduct was not discovered for a year and a half. Stated otherwise, the position was vacant; by a "refusal" to sign the constitutional oath appellant had exhausted his certification; respondent county engineer was without authority to tender appellant the opportunity to qualify for a vacancy for which he had not been certified. We point out that we are dealing with the facts as they are before us; not as they might have been if appellant had been continued in his work either on the basis of an unaltered unencumbered oath or upon the basis of an unaltered oath encumbered by an added statement as appellant offered to provide on January 31, 1967. The oath as last mentioned was not accepted. As we have pointed out it was not authorized to be accepted. The letter of termination was appropriate.

Even if we were to assume the vacancy continued to exist and a position were available to appellant in January 1967, the oath and statement which he was prepared to subscribe would not have been an acceptable compliance with the constitutional requirement.

 WAS APPELLANT'S PROPOSED SUPPLEMENTED OATH COMPATIBLE WITH THE CONSTITUTIONAL OATH?

No. Appellant contends the statement which he proposed to attach to the unaltered form of the constitutional oath does not constitute a modification of that oath, citing *Pockman* v. *Leonard*, 39 Cal.2d 676 [249 P.2d 267], as authority for the proposition that the California Constitution "does not prohibit the Legislature from prescribing an oath . . . in a different form of words from that therein used, if the intent, object and meaning of the Constitution be not violated."[2] Appellant in effect argues from such language that he likewise may write his own oath in order that it be compatible with his religious beliefs if "the intent, object and meaning of the Constitution be not violated." We do not need to evaluate *Pockman* in that connection, for the quite obvious reason that we are not concerned with a legislative direction. A more important consideration is that the offered supplementation is an unacceptable alteration of the oath regardless of *Pockman* in the context in which it has been cited by appellant.

---

[2]The quotation improperly is taken by appellant from the headnotes. The thought is consistent, however, with the Supreme Court's actual quotation, at page 682 of *Cohen* v. *Wright*, 22 Cal. 293, 310.

Article VI of the federal Constitution in part provides that specified federal and state officers "shall be bound by Oath or Affirmation, to support this Constitution; but no religious test shall ever be required as a Qualification to any Office or public Trust under the United States." The draftsmen of the Constitution did not consider an oath to support the Constitution a religious test, else they violated the restriction in the writing of the requirement. The annotations to United States *Code Annotated* disclose no case in which an inconsistency between the two clauses has been suggested.

Similar limitation is found in the state Constitution by the proviso in section 3 of article XX, that "no other oath, declaration, or test, shall be required as a qualification for any public office or employment." (*Pockman* v. *Leonard, supra,* 39 Cal.2d 676, 682, 686.)

What effect should be attributed to the addendum language which appellant to all intents and purposes made a condition of taking and signing the constitutional oath. Should it be deemed surplusage or meaningless? Is it innocuous or merely expository? We think not.

Appellant proposed to add, after promising to support and defend the two Constitutions, the statement:

"I take this oath, pledging my loyalty and allegiance to my country, but declaring my supreme allegiance to the Lord Jesus Christ Whom Almighty God has appointed ruler of Nations, and expressing my dissent from the failure of the Constitution to recognize Christ and to acknowledge the Divine institution of civil government."

Regardless of the meaning of those words to the unaffected bystander, they had to have meaning to appellant, else he would not have insisted upon their use. Having meaning to appellant they likewise must have meaning to respondents as interested parties, whether that meaning be cloudy or crystal clear. The most obvious meaning would appear to be that appellant would be saying: "I will support and defend the organic law of my country and state but—if my religious beliefs and the support and defense of the constitution do not square, my temporal commitment will have to yield. Furthermore, I do not have a present conviction in the soundness of that organic law for the reason that it does not 'acknowledge the divine institution of civil government.' " In such case appellant is gratuitously injecting his religious beliefs into the governmental process, the very subject into which the organic law forbids inquiry by government. It must be assumed he does it for a purpose. The purpose, if it has any

meaning, is to make equivocal the essential oath preceding his personal statement. The individual's religious beliefs may or may not compel him to give unilateral expression to them in connection with his secular activities, but that is a decision which he must make for himself. We believe it to be neither reasonable, nor good policy, in the case of public employment, to put upon civil government the burden of measuring religious beliefs against the interests and requirements of that institution. It may not raise the question itself; it should not have to evaluate the question when raised by the individual, as in the case at bench. Apposite is the admonition, "Render therefore unto Caesar the things which are Caesar's; and unto God the things that are God's." (Matthew, xxii, 21). Respondents properly refused to accept the oath encumbered and compromised by appellant's injection of an unauthorized potential qualification of its meaning and clarity.

"This may be a hard case on the appellant—indeed it seems to be so—but we cannot set aside the directions of the Constitution to relieve him." (*Searcy* v. *Grow*, 15 Cal. 117, 123.)

The judgment is affirmed.

Brown, Gerald, P. J., and Coughlin, J., concurred.