[No. B194130. Second Dist., Div. One. Jan. 30, 2008.]

JOHN HOLMGREN et al., Plaintiffs and Appellants, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Kalisch, Cotugno & Rust, Lee W. Cotugno, Richard N. Rust; Bahan & Associates and Della Bahan for Plaintiffs and Appellants.

Cochran-Bond Law Offices and Walter Cochran-Bond for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Jones Day, Elwood Lui, Philip E. Cook, Brian M. Hoffstadt; Akerman Senterfitt, Nowland C. Hong and Michael M. Mullins for Defendant and Respondent.

## OPINION

**VOGEL, J.**—As expressly authorized by its charter and by section 31000 of the Government Code, the County of Los Angeles outsourced engineering work to two firms which over the course of many years provided engineers to perform specified work for the county. The engineers were employees of the contracting firms and paid by the contracting firms, and all signed written acknowledgements that they were *not* employees of the county and *not* entitled to any of the benefits available to county employees. Three of these engineers nevertheless filed this class action against the county, contending they were the county's "common law employees" and, as such, entitled to civil service and retirement benefits under the county's retirement plan. The trial court disagreed and so do we.

### FACTS

#### A.

In 1989, the county entered into "Master Agreements" with MiniSystems Associates and TAD Resources International, Inc. (the contractors), pursuant to which the county agreed to (and did) solicit bids from the contractors for specific work to be accomplished by telecommunications engineers and support staff for a specific period of time. In response, the contractors agreed to (and did) bid specific individuals (engineers and support staff the contractors had hired as their own employees), and the county then executed work orders with the contractor submitting the lowest qualified bid (there were many of these contracts over a period of years). In every instance, the contractors billed the county for the work performed, and the county paid the contractors, not the engineers. The Master Agreements made the contractors "solely liable" for the engineers' compensation and benefits, and expressly prohibited the county from soliciting the engineers except through public hiring announcements.

John Holmgren, Michael Sheppa, and Keith Johnston were hired by the contractors, and in that capacity all three performed engineering services for

the county between 1989 and 2000. Holmgren, Sheppa and Johnston (henceforth collectively Holmgren) each acknowledged in writing that he was not a county employee, and all were paid only by the contractors, not by the county.[1]

## B.

In September 2000, Holmgren filed a government tort claim (Gov. Code, § 940 et seq.) with the county, asserting that the county had "improperly, inaccurately and falsely mislabeled [him] as [a] 'contract employee[],' 'leased employee[],' 'independent contractor[],' 'temporary employee[],' and/or employee[] of various employment agencies, even though both factually and legally [he is] and/or [was a] common law employee[] of the County." The county denied the claim. In November, Holmgren (on behalf of himself and others similarly situated) filed this class action against the county and, in March 2002, filed his second amended complaint, the operative pleading, petitioning for a writ of mandate and alleging four causes of action—denial of equal protection, breach of the county's duty to properly designate employees, breach of statutory and third party beneficiary contracts, and other statutory violations.[2]

The theme of the second amended complaint is that Holmgren, although "pay-rolled" through one of the contractors and "misdesignated" as a contract employee, was screened, interviewed, and effectively hired by the county; worked solely on county business; had his salary fixed by the county; was subject to the direct supervision and control of the county; and used county facilities, equipment and supplies to perform county business. More specifically, he alleged that the work he performed was the same as or similar to that performed by "recognized County employees" with whom he worked side by side—but that he was nevertheless paid lower wages and did not receive the benefits received by the county's "recognized" workers (including retirement pensions, paid vacation and sick leave, grievance procedures, and step salary increases).[3]

---

[1] The written acknowledgements provided: "I understand and agree that I am not an employee of the County of Los Angeles for any purpose whatsoever and that I do not have and will not acquire any rights or salary benefits of any kind from the County of Los Angeles by virtue of my performance of work under the above-referenced contract."

[2] The three named plaintiffs are Holmgren, Johnston and Sheppa. Johnston, who was employed by TAD, left in December 1999; Holmgren and Sheppa, who were employed by MiniSystems, left in 2002, then applied for and were appointed to civil service positions with the county.

[3] This is how the trial court summarized the operative pleading: "Reduced to its essence, the [second amended] complaint claims the County treated [Holmgren] as [a] de facto employee[], assigned [him] jobs for which no exemption[s] to mandatory civil service requirements exist, and effectively categorized [him] in a way designed to avoid the civil service framework and

The county answered, discovery ensued, and in July 2005 the trial court certified a class defined as all "persons who, currently or in the past, have performed services for the County, where the performance of such services was not of a temporary (less than one year), emergency or recurrent nature, who were not treated as classified County employees (e.g., 'contract employees,' 'leased employees,' 'temporary employees,' and/or 'independent contractors,' who were not on the County's classified employees payroll and who did not receive retirement or customary employee benefits under the County Charter or County Code), but who worked for the County as part of an integrated work force with classified County employees subject to supervision by County employees, under common law principles, and who have been paid by entities other than the County and/or directly by the County with payments reported on IRS Form 1099. Excluded from this class are members of the class certified in *Shiell v. County of Los Angeles*, BC208582, and all officers and unclassified positions as defined by the County Charter and County Code."[4]

## C.

Based on a stipulated case management plan, stipulated facts, and some (but not much) additional evidence, the trial court heard and decided three "threshold issues," as follows.

**Threshold Issue No. 1** asked: "Is plaintiffs' lawsuit (or any of the individual causes of action alleged in their complaint) time-barred, or are recoverable remedies, damages or money limited, in whole or in part, under applicable statutes of limitations or Government Claims Act presentation requirements?"

In October 2005, the trial court, applying the three-year period of limitations (Code Civ. Proc., § 338, subd. (a)), ruled (1) that the period of limitations began to run from the date each class member was first hired as a contractor or rehired by the county, and (2) that the class members' monetary claims were "central" to this litigation (not merely incidental to the writ relief

its related compensation requirements. The County, according to [Holmgren], impermissibly circumvented its own civil service system by implementing a parallel structure utilizing outside agencies to permanently assign workers non-exempt jobs without appropriately classifying them as required by the County's Charter, Code and Civil Service Regulations."

[4] *Shiell v. County of Los Angeles* (Super. Ct. L.A. County, BC208582) is a class action prosecuted by "contract" lawyers claiming they are county employees. (See also *Hall v. County of Los Angeles* (2007) 148 Cal.App.4th 318 [55 Cal.Rptr.3d 732] [affirming a judgment for the county in a related action in which another group of contract lawyers sued the county, alleging they were the victims of gender-based wage discrimination as a result of their contract status].) The *Hall, Holmgren* and *Shiell* actions were assigned to the same trial judge, and *Holmgren* and *Shiell* (in which a separate appeal is pending) followed parallel litigation tracks.

sought by way of mandamus) and subject to the Government Tort Claims Act, thus barring claims for damages outside the one-year claim period.

**Threshold Issue No. 2** asked: "In the event the plaintiffs are found to be common law employees of the County upon application of common law employment factors, are they entitled to salary, benefits . . . and protections provided classified employees under the County Charter, the County Code, and the Los Angeles County Civil Service Commission Rules?"

In May 2006, the trial court ruled that county employment is not governed by the common law definition of employment, and that the class members were not entitled to salary benefits or protections provided to the county's civil service employees. The court held that the county's comprehensive civil service scheme "determine[s] *who* is a civil service employee, and *how* one is to become a civil service employee"—and that "compliance with the civil service system is the *only* way to attain civil service status, as well as its salary, benefits . . . and protections." The court rejected Holmgren's claim that he and the class members had substantially complied with the requirements for entry into the civil service system, refused to rely on the common law definition of "employee" because the term is described by the governing statutes and rules, and confirmed the county's right to decide, for economic reasons, to have certain work performed by independent contractors rather than civil service employees.[5]

**Threshold Issue No. 3** asked: "In the event that plaintiffs are found to be common law employees of the County upon application of common law employment factors, are they entitled to pension benefits, or service credits affecting the calculation of such benefits under the County Employees Retirement Law of 1937 (CERL)?"

In August 2006, the trial court ruled that, assuming the class members *were* "common law" employees, they were nevertheless not entitled to benefits under CERL (County Employees Retirement Law of 1937; Gov. Code, § 31450 et seq.) because (a) it was up to the county to determine who became a civil service employee entitled to retirement benefits, and (b) the class

---

[5] Although most of Los Angeles County's employees are covered by its civil service system, section 44.7 of article IX of the Los Angeles County Charter permits the board of supervisors, based upon a finding "that work can more economically or feasibly be performed by independent contractors," to specify the criteria for and then enter contracts for the performance of such work. The trial court's decision that the county is authorized to outsource professional positions is based on section 44.7.

members are not employees within the meaning of CERL (Gov. Code, § 31469, subd. (a)).[6]

## D.

Holmgren, recognizing that the trial court's threshold rulings had eviscerated his action, stipulated with the county for entry of judgment on the threshold issues, and a judgment on that stipulation was entered on October 26, 2006. Holmgren appeals.

## DISCUSSION

## I.

We begin with a summary of the laws governing the County of Los Angeles in its capacity as a charter county.

### A. *A Brief Overview of County Law*

■ When a California county adopts a charter, its provisions "are the law of the State and have the force and effect of legislative enactments." (Cal. Const., art. XI, § 3, subd. (a); see *id.*, §§ 1, subds. (a), (b), 4.) Under the "home rule" doctrine, county charter provisions *concerning the operation of the county*, and specifically including the county's right to provide "for the number, compensation, tenure, and appointment of employees" (that is, a county's core operations) trump conflicting state laws. (Cal. Const., art. XI, § 1, subd. (b); *Los Angeles County Civil Service Com. v. Superior Court* (1978) 23 Cal.3d 55, 65 [151 Cal.Rptr. 547, 588 P.2d 249]; see *County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 285 [132 Cal.Rptr.2d 713, 66 P.3d 718] [the "constitutional language is quite clear and quite specific: the *county*, not the state, not someone else, shall provide for the compensation of its employees . . ."]; *Dibb v. County of San Diego* (1994) 8 Cal.4th 1200, 1207 [36 Cal.Rptr.2d 55, 884 P.2d 1003]; see also *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1149 [45 Cal.Rptr.3d 21, 136 P.3d 821].)

■ The county's charter, adopted in 1912, expressly permits the county to either hire its own employees or outsource work to independent contractors

---

[6] Subsequent undesignated section references are to the Government Code.

(L.A. County Charter, §§ 32–36½, 44.7; and see Gov. Code, § 31000),[7] and the county has plenary authority to determine who is a civil service employee and who is not (*Los Angeles County Employees Assn. v. Superior Court* (2000) 81 Cal.App.4th 164, 173, fn. 7 [96 Cal.Rptr.2d 418] ["the determination of civil service status must be made on a county-by-county basis in accordance with each county's charter"]). As a result, the terms of civil service employment are governed by statute, not by contract. (*Miller v. State of California* (1977) 18 Cal.3d 808, 813–814 [135 Cal.Rptr. 386, 557 P.2d 970] [public employment is not held by contract but by statute].)

## B. *A Brief Summary of Los Angeles County's Civil Service System*

■ The county's charter assigns all county employment positions into one of two groups—"unclassified service" (elected county officials, heads of county agencies, and other enumerated executive positions) and "classified service" (all remaining positions). (L.A. County Charter, § 33.) As required by the charter, the county has a formal civil service system (detailed in civil service rules adopted by the board of supervisors and found in the L.A. County Code) for filling classified positions and fixing the salary and benefits of classified employees, and these rules define an "employee" as "any person holding a position in the classified Service of the County." (L.A. County Civil Service Com. Rules, rule 2.24.) The *only* way to become a Los Angeles County civil service employee is through compliance with the procedures set out in the county's civil service rules. (*Id.,* rules 5.05(A), 6.01–6.03, 13.03, 22.01.)

■ The charter also gives the county the right to hire independent contractors as a cost-saving measure. (Fn. 5, *ante*; see *Hall v. County of Los Angeles, supra*, 148 Cal.App.4th 318.) To that end, the Los Angeles County Code includes detailed procedures covering the county's ability to enter

---

[7] Section 31000 provides: "The board of supervisors may contract for special services on behalf of the following public entities: the county, any county officer or department, or any district or court in the county. Such contracts shall be with persons specially trained, experienced, expert and competent to perform the special services. The special services shall consist of services, advice, education or training for such public entities or the employees thereof. The special services shall be in financial, economic, accounting (including the preparation and issuance of payroll checks or warrants), engineering, legal, medical, therapeutic, administrative, architectural, airport or building security matters, laundry services or linen services. They may include maintenance or custodial matters if the board finds that the site is remote from available county employee resources and that the county's economic interests are served by such a contract rather than by paying additional travel and subsistence expenses to existing county employees. The board may pay from any available funds such compensation as it deems proper for these special services. The board of supervisors may, by ordinance, direct the purchasing agent to enter into contracts authorized by this section within the monetary limit specified in Section 25502.5 of the Government Code."

contracts with independent contractors when services can in that fashion be performed more economically or feasibly than by classified employees. (L.A. County Code, ch. 2.121, §§ 2.121.310, 2.121.320, 2.121.330, 2.121.340, 2.121.350, 2.121.380, 2.121.420, subd. A.) When these conditions are satisfied or when the county's authority to contract is authorized by statute, section 44.7 of the county's charter expressly authorizes the use of independent contractors, notwithstanding that the work could be "performed by county employees through the recruitment of additional county personnel." (L.A. County Code, § 2.121.250, subds. B.1., A.; see Gov. Code, § 31000; fn. 7, *ante.*)

### C.  *A Brief Summary of the County Employees Retirement Law (CERL)*

■   Since 1937, Los Angeles County has participated in CERL, a pension system available to California's counties that elect to participate and (as adopted by the county) covering persons (1) "employed by the county," (2) "whose compensation is fixed by the board of supervisors of the county," and (3) "whose compensation is paid by the County." (L.A. County Code, ch. 5.20, § 5.20.010; see § 31500; § 31469, subd. (a) [" 'Employee' means any officer or other person employed by a county *whose compensation is fixed by the board of supervisors or by statute and whose compensation is paid by the county,* and any officer or other person employed by any district within the county" (italics added)].)[8] Subject to a few exceptions for seasonal and part-time employees, all classified county employees are automatically enrolled in the Los Angeles County Employees Retirement Association (LACERA). (§§ 31550, 31551, 31552.)

With these rules in mind, we turn to the issues raised on this appeal.

### II.

Holmgren contends neither section 31552 "nor any other section of CERL limits County employment to civil service employment," and that he and the members of the class are entitled to the same benefits as the county's classified employees. In a related argument, he claims the county's "illegal misclassification scheme" cannot be used to avoid its obligation to enroll Holmgren and the class members in CERL. We disagree.

---

[8] Under section 31469, counties may make CERL available to employees whose compensation is fixed by statute or by the board of supervisors, but the county's provision limits CERL's benefits to employees whose compensation is fixed by the board of supervisors.

## A.

The express purpose of CERL "is to recognize a public obligation to county . . . *employees* who become incapacitated by age or long service in public employment and its accompanying physical disabilities by making provision for retirement compensation and death benefit as additional elements of compensation . . . ." (§ 31451, italics added.) To these ends, section 31552 provides that "[a]ll existing officers and *employees* of the county become members of [their county's] association on the day the retirement system becomes operative, and thereafter each person *entering the county employ* becomes a member on the first day of the calendar month after his *entrance into the service* . . . ." (Italics added.)

## B.

To avoid the conclusion that his employer was his contractor, not the county, Holmgren contends he is a common law employee of the county. In this context, he is mistaken.

The concept of common law employment originally fixed the boundaries of vicarious liability in tort actions (*Villanazul v. City of Los Angeles* (1951) 37 Cal.2d 718 [235 P.2d 16]), and later was applied to determine an employee's responsibility under antikickback laws (*People v. Palma* (1995) 40 Cal.App.4th 1559, 1565–1566 [48 Cal.Rptr.2d 334]). More recently, the doctrine has been applied in employment law—but only when the relevant statutory scheme does not define "employment." (*Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500–501 [9 Cal.Rptr.3d 857, 84 P.3d 966] [referred to by the parties as *Cargill,* the name of the real party in interest].) Where (as here) the term is defined by the statute, the Legislature's definition controls and the doctrine of common law employment is irrelevant. (E.g., *Reynolds v. Bement* (2005) 36 Cal.4th 1075, 1086–1087 [32 Cal.Rptr.3d 483, 116 P.3d 1162] [common law doctrine does not apply when the Legislature has clearly and unequivocally defined its terms]; *Estrada v. FedEx Ground Package System, Inc.* (2007) 154 Cal.App.4th 1, 10 [64 Cal.Rptr.3d 327] [common law test applied where governing statute did not expressly define "employee" for purposes of an employer's obligation to indemnify the employee's expenses]; see also *Eureka Teacher's Assn. v. Board of Education* (1988) 202 Cal.App.3d 469, 473–474 [247 Cal.Rptr. 790]; *Peralta Federation of Teachers v. Peralta Community College Dist.* (1979) 24 Cal.3d 369, 375–386 [155 Cal.Rptr. 679, 595 P.2d 113]; *Balasubramanian v. San Diego Community College Dist.* (2000) 80 Cal.App.4th 977, 983 [95 Cal.Rptr.2d 837]; *Heard v. Board of Administration, etc.* (1940) 39 Cal.App.2d 685, 695 [104 P.2d 47]; *Los Angeles County Employees Assn. v. Superior Court, supra,* 81 Cal.App.4th at pp. 169–175.)

In *Cargill,* the statute stated only that an "employee" was " '[a]ny person in the employ of any contracting agency.' " (*Metropolitan Water Dist. v. Superior Court, supra,* 32 Cal.4th at p. 500.) In our case, by contrast, section 31469, subdivision (a), and Los Angeles County Code section 5.20.010 quite clearly and unequivocally define a CERL-eligible employee as *a person employed by the county whose compensation is "fixed by the Board of Supervisors" and "paid by the County."*[9] Consistent with the statute, the county's civil service rules define an "employee" as "any person holding a position in the classified Service of the County" (L.A. County Civil Service Rules, rule 2.24) and provide that the only way to become a Los Angeles County civil service employee is through compliance with the procedures set out in the civil service rules. (*Id.,* rules 5.05(A), 6.01–6.03, 13.03, 22.01.) It follows ineluctably that this is *not* a case in which the statute refers to employees without defining the term, that eligibility for CERL benefits is entirely dependent on the statutory definition, and that the common law doctrine does not apply in this context.

## C.

Relying primarily on our decision in *Los Angeles County Employees Assn. v. Superior Court, supra,* 81 Cal.App.4th 164 (*LACEA*), Holmgren contends he and the members of the class were impermissibly denied CERL benefits as part of a "misclassification scheme" designed to avoid the county's obligations under CERL. *LACEA* is inapposite. In that case, the judges at the Compton Municipal Court, in implementing a series of cost-saving measures, decided "that newly hired [courtroom] clerks would be non-civil service" and that existing deputy court clerks would lose their civil service status if they accepted a promotion. (*LACEA,* at p. 167.) We affirmed a judgment in favor of the clerks, holding that the judges had no power to deny civil service status to any county employee. (*Id.,* at pp. 176–178.) *LACEA* and the other cases relied on by Holmgren (including *Powers v. Board of Public Works* (1932) 216 Cal. 546 [15 P.2d 156]; *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29 [115 Cal.Rptr.2d 151]; *Villanazul v. City of Los Angeles, supra,* 37 Cal.2d 718) have nothing to do with the county's authority to hire independent contractors in lieu of creating more civil service positions.

The fact that Holmgren and the class members performed the same duties as civil service employees has nothing to do with the price of

---

[9] There is no evidence that the county fixed the amount that the contractors paid to Holmgren or the members of the class (or even had anything to say about the amount the contractors paid their employees); the parties stipulated that the class members were "not on the County's payroll" and received their pay only from their contractors. (See § 31469, subds. (a), (c).)

tomatoes. As explained above, the county's charter gives it the power to use independent contractors as a cost-saving measure, notwithstanding that the work performed by the employees of the contractors could be performed by county employees through the recruitment of additional county personnel, and section 31000 expressly confirms this power with regard to engineers. Under these circumstances, the quotidian details defining Holmgren's job duties are irrelevant. (*Heard v. Board of Administration, etc.*, *supra*, 39 Cal.App.2d 685; *Jenkins v. County of Riverside* (2006) 138 Cal.App.4th 593, 610–616 [41 Cal.Rptr.3d 686]; *Smith v. County Engineer* (1968) 266 Cal.App.2d 645, 649, 653 [72 Cal.Rptr. 501]; *Anderson v. Lewis* (1915) 29 Cal.App. 24, 27 [154 P. 287]; *Lopez v. Payne* (1921) 51 Cal.App. 447, 449 [196 P. 919]; *Pinion v. State Personnel Board* (1938) 29 Cal.App.2d 314, 318–319 [84 P.2d 185]; *Conover v. Board of Equalization* (1941) 44 Cal.App.2d 283 [112 P.2d 341].) In short, there was no "misclassification scheme."[10]

## III.

Holmgren contends the county's authority to outsource is limited to temporary positions, and that it does not have "plenary authority" to "fill full time, permanent civil service positions and then misclassify them as non-employees." To the extent Holmgren assumes he and the class members are common law employees (and thus cannot be independent contractors at the same time), his argument fails for the reasons explained above. To the extent he contends the county failed to comply with its own rules, he is simply wrong.

■ As explained above and in *Hall v. County of Los Angeles*, *supra*, 148 Cal.App.4th at page 326, the county's charter authorizes outsourcing. Holmgren's notion that this power is limited to temporary positions finds no support in the Government Code, the county's charter or case law. To the contrary, section 31000 expressly authorizes the board of supervisors to contract for special services—in financial, economic, accounting, engineering, law, and other areas—on behalf of the county, and there is *nothing* in the statute limiting such contracts to temporary positions. (Cf. 76 Ops.Cal.Atty.Gen. 86 (1993).) The case relied on by Holmgren, *Handler v. Board of Supervisors* (1952) 39 Cal.2d 282, 286–287 [246 P.2d 671], does not support his position. *Handler* holds only that section 31000 gives counties the authority to enter special service contracts, not that the authority granted

---

[10] Our conclusion that there was no "misclassification scheme" makes it unnecessary to consider Holmgren's contentions that such a scheme violated his right to equal protection, and also violated Labor Code section 223 (providing that when a statute requires an employer to maintain a designated wage scale, it is unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute).

is limited to such contracts (or in any other way)—and the only issue in *Handler* was whether the County of San Mateo could enter into an independent contractor relationship based on a resolution rather than an ordinance. Accordingly, section 31000 gives the county the authority to outsource engineering work without regard to the county code's limitations on work that is not covered by statute. (L.A. County Code, § 2.121.250, subd. B.1.)

## IV.

■ We summarily reject Holmgren's contention that he and the class members have substantially complied with the civil service system's requirements and have become civil service employees "by operation of law." A civil service statute is mandatory as to every requirement, and the doctrine of substantial compliance does not apply in this context. (*State ex rel. Kos v. Adamson* (1948) 226 Minn. 177, 182–183 [32 N.W.2d 281]; *Conjour v. Whitehall Tp.* (E.D.Pa. 1994) 850 F.Supp. 309, 315; *Civil Service Board of City of Phoenix v. Warren* (1952) 74 Ariz. 88, 90 [244 P.2d 1157]; *Davenport v. Reed* (Pa.Commw.Ct. 2001) 785 A.2d 1058, 1062; *Resnick v. Civil Service Commission* (1968) 156 Conn. 28, 32–33 [238 A.2d 391]; *Horner v. Acosta* (Fed.Cir. 1986) 803 F.2d 687, 691–694.)[11]

Finally, we summarily reject the arguments presented by amicus curiae California Employment Lawyers Association in a brief suggesting that, by operation of law, virtually everyone who performs any work at all for the county becomes a civil service employee. More specifically, the amicus curiae brief contends the engineers were common law employees, focuses on issues that are not before us on this appeal either because they were not raised in the trial court (*Pratt v. Coast Trucking, Inc.* (1964) 228 Cal.App.2d 139, 143 [39 Cal.Rptr. 332]) or because they are not based on our facts, and ignores section 31000 and its express statutory authorization for a county's decision to outsource engineering work. As a practical matter, the amicus curiae brief simply disagrees with the county's outsourcing decision and ignores the county's legitimate interest in saving money. The brief adds nothing to our analysis of the issues legitimately before us.[12]

---

[11] Our conclusion that Holmgren has no rights under the civil service system makes it unnecessary to consider his challenges to the trial court's rulings vis-à-vis the bar of limitations and the claim filing statutes.

[12] According to its Web site, <http://www.celaweb.org/> (as of Jan. 30, 2008), the California Employment Lawyers Association is "a statewide organization of attorneys representing employees in termination, discrimination and other employment cases. [It helps its] members protect and expand the legal rights of working women and men through litigation, education and advocacy." It files amicus curiae briefs to "help develop California employment law's legal precedents and protect plaintiffs' verdicts."

## DISPOSITION

The judgment is affirmed. The county is awarded its costs of appeal.

Mallano, Acting P. J., and Jackson, J.,* concurred.

Appellants' petition for review by the Supreme Court was denied April 30, 2008, S161636.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.