Filed 6/13/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAWN BENNETT, | |
|     Plaintiff and Respondent, | G054617 |
|     v. | (Super. Ct. No. RIC 1218298) |
| RANCHO CALIFORNIA WATER DISTRICT, | ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |
|     Defendant and Appellant. | |

It is ordered that the opinion filed herein on May 29, 2019, be modified as follows:

On page 15, following the end of the second full paragraph, add the following paragraphs:

In support of his petition for rehearing, Bennett cites *Dynamex Operations West, Inc. v. Superior Court* (2018) 4 Cal.5th 903 (*Dynamex*). His reliance is misplaced as *Dynamex* does not assist him. Bennett argues that "all Bennett had to do to satisfy the first element of his section 1102.5 claim was to demonstrate that he had provided services to

the District, a fact which the District never contested." (Italics omitted.) Bennett's argument continues: "In light of that undisputed predicate fact, it was therefore the District's burden in that subsequent section 1102.5 action to prove that Bennett was not its presumed employee, but was instead an independent contractor"—rendering the burden on the District "the exact same in both proceedings." (Italics omitted.)

Bennett's arguments miss the point. In our analysis of burdens, we are concerned with the applicability of the doctrine of collateral estoppel to the administrative law judge's determination the District failed to carry its burden of proving Bennett was an independent contractor in the CalPERS proceeding. Dispositive to our analysis is the administrative law judge's express statement that, from the outset, the District had "the burden of demonstrating by a preponderance of the evidence that Mr. Bennett was an independent contractor." As discussed *ante*, we apply the express language of section 1102.5 and California Supreme Court authority interpreting that language in concluding it was Bennett's initial burden in the trial court to show that he was an employee, by whatever modicum of proof may be required, to prove his section 1102.5(b) claim. Therefore, the burden applied by the administrative law judge and Bennett's initial burden with regard to employment status in proving the section 1102.5(b) claim were not identical for purposes of collateral estoppel applicability.

*Dynamex* does not cite section 1102.5, much less analyze the burdens of proof relevant to section 1102.5(b) claims. In *Dynamex*, the Supreme Court stated: "The issue in this case relates to the resolution of the employee or independent contractor question *in one specific context*. Here we must decide what standard applies, under California law, in

2

determining whether workers should be classified as employees or as independent contractors *for purposes of California wage orders*, which impose obligations relating to the minimum wages, maximum hours, and a limited number of very basic working conditions (such as minimally required meal and rest breaks) of California employees." (*Dynamex, supra,* 4 Cal.5th at pp. 913-914, first italics added.)

This modification does not effect a change in judgment. The petition for rehearing is DENIED.


FYBEL, J.

I CONCUR:


O'LEARY, P. J.


I DISSENT: I am of the opinion the petition for rehearing should be GRANTED.


THOMPSON, J.

3

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SHAWN BENNETT, | G054617 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIC 1218298) |
| RANCHO CALIFORNIA WATER DISTRICT, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment and postjudgment order of the Superior Court of Riverside County, Angel M. Bermudez, Judge.  Judgment reversed and remanded with directions.  Postjudgment order affirmed.  Request for Judicial Notice.  Granted.

Horvitz & Levy, Barry R. Levy, Mark A. Kressel; Meyers Fozi, Neal S. Meyers, Golnar J. Fozi and Athena B. Troy for Defendant and Appellant.

Williams Iagmin and Jon R. Williams for Plaintiff and Respondent.

\*          \*          \*

## INTRODUCTION

Plaintiff Shawn Bennett sued defendant Rancho California Water District (the District) for whistleblower retaliation in violation of Labor Code section 1102.5, subdivision (b).[1] At the jury trial, the trial court excluded evidence showing Bennett's relationship with the District was anything other than an employment relationship. Citing an administrative law judge's prior finding Bennett had been the District's employee for purposes of retirement benefits eligibility through the California Public Employees' Retirement System (CalPERS), the trial court concluded the doctrine of collateral estoppel applied and established Bennett had been the District's employee.

We reverse and remand to the trial court with directions to conduct a new trial. We hold a party is not collaterally estopped from litigating an issue when, in a prior proceeding, a dispositive finding had been made, but only by imposing a lesser burden of proof on the party invoking collateral estoppel than that which would have been applied in the subsequent proceeding. To prevail on a section 1102.5(b) claim, *the plaintiff* must prove employment status. In the prior CalPERS proceeding, the administrative law judge expressly assigned to *the District* the burden of proving Bennett had been its independent contractor and thereby entirely relieved Bennett of the burden of proof on that issue. The trial court therefore erred by finding the doctrine of collateral estoppel applicable and precluding litigation of Bennett's employment status. At the retrial, for the reasons we explain, the common law definition of employee will apply to Bennett's section 1102.5(b) claim.

_____

[1] All further statutory references are to the Labor Code unless otherwise specified. We refer to section 1102.5, subdivision (b) as "section 1102.5(b)." Since Bennett initiated this lawsuit, section 1102.5, including subdivision (b), has been amended, effective January 1, 2014. (Stats. 2013, ch. 781, § 4.1.) Because the amendments to section 1102.5 do not affect the issues in the present appeal, we uniformly refer to the statute as section 1102.5 and, in so doing, cite to the applicable prior version of that statute that was in effect January 1, 2004 through December 31, 2013.

2

The court did not err, however, by denying the District's motion for judgment notwithstanding the verdict (JNOV) brought on the ground insufficient evidence supported the findings Bennett had been employed by the District and had made disclosures within the meaning of section 1102.5(b). We reject the District's contention its proposed statutory definition of the term "employee" applied to the section 1102.5(b) claim. Because the trial court's erroneous evidentiary ruling severely limited the presentation of evidence, the District was not entitled to judgment entered in its favor notwithstanding the verdict.

## BACKGROUND

### I.

### THE FIRST AMENDED COMPLAINT

In February 2013, Bennett filed the first amended complaint for damages against the District. He asserted claims for (1) willful improper classification as an independent contractor in violation of section 226.8 and Government Code section 53060, and (2) retaliatory employment termination in violation of section 1102.5(b). We summarize relevant allegations of the first amended complaint as follows.

The District is "a public entity which provides water and wastewater services in its service area which is generally located in the Southwest area of Riverside County." In July 2008, Bennett and the District entered into a "Professional Services Agreement" (the agreement) for Bennett "to fulfill the IT Help Desk Services position." The District classified Bennett as an independent contractor.

Bennett alleged that: The District "exercised complete control" over his activities. Bennett was "under the direction and control of not only the IT Manager, but the Systems Administrator, and Datacenter Operation's Supervisor." Bennett "performed all the services of an employee and in fact worked side by side in performing his work with other [of the District's] employees."

3

In June 2012, Bennett questioned whether he had been improperly classified as an independent contractor. After conducting research on the issue, on June 21, 2012, he advised one of his supervisors, Dale Badore, that he believed that he had been misclassified and requested that he be classified as an employee of the District. Around the same time, the District asked Bennett to sign a new "Professional Services Agreement."

In July 2012, Bennett was asked to report to the office of the District's chief financial officer. He met with the chief financial officer, Jeff Armstrong, and the IT manager, Jason Martin. Bennett was informed that "the 'Board wanted to continue his relationship as a contractor'" and presented him with "a modified Statement of Objectives [that was] significantly different from what he had been asked to sign earlier but carrying the same date and identified as the same version."

Two days later, Bennett sent an e-mail to Armstrong, advising him that Bennett believed he had been knowingly misclassified as an independent contractor and again explaining his reasoning. He asked the District to reconsider its demand that he continue working as an independent contractor. He included the District's head of human resources, Eileen Dienzo, on his e-mail to Armstrong.

At Bennett's request, Dienzo met with Bennett. He advised Dienzo that he felt the issue of his misclassification was a human resources issue. Bennett was assured that the District was taking the matter seriously and looking into the situation.

On August 13, 2012, Bennett was notified the District had decided to terminate its agreement with him. Bennett believed the District "ha[d] engaged in a pattern and practice of knowingly hiring 'contractors' to perform work done by employees and ha[d] knowingly mis[]classified those persons to avoid paying taxes and benefits."

4

## II.
### THE TRIAL COURT SUSTAINS THE DISTRICT'S DEMURRER WITHOUT LEAVE TO AMEND; WE REVERSE THE ORDER SUSTAINING THE DEMURRER AS TO THE SECTION 1102.5(B) CLAIM.

The District demurred to the first amended complaint as to the willful improper classification of an independent contractor cause of action and the section 1102.5(b) claim each on the ground, inter alia, it "fail[ed] to state facts sufficient to constitute a cause of action." The District's demurrer to the first amended complaint was sustained without leave to amend. Bennett appealed.

In our prior nonpublished opinion *Bennett v. Rancho California Water District* (June 18, 2015, G050892), we affirmed in part and reversed in part. We held that Bennett's first cause of action for willful misclassification as an independent contractor failed because section 226.8 does not apply to a public entity such as the District and therefore affirmed the dismissal of the willful misclassification claim. We reversed the dismissal of section 1102.5(b) claim, however, because the first amended complaint stated sufficient facts to show Bennett had reasonable cause to believe the information he gave to the District disclosed a violation of state or federal law.

## III.
### TWO SEPARATE ADJUDICATIONS YIELD CONTRARY FINDINGS: BENNETT IS DENIED UNEMPLOYMENT BENEFITS ON THE GROUND HE WAS NOT THE DISTRICT'S EMPLOYEE, BUT IS AWARDED CALPERS RETIREMENT BENEFITS ON THE GROUND HE WAS SUCH AN EMPLOYEE.

After Bennett was informed of the termination of his contract with the District, he applied to the California Employment Development Department (EDD) to receive unemployment benefits. Although the EDD determined Bennett was eligible for benefits under the Unemployment Insurance Code, the Unemployment Insurance Appeals

5

Board reversed that determination on the ground Bennett had not been the District's common law employee and thus was not eligible to receive unemployment benefits.[2]

Bennett also pursued retirement benefits through CalPERS, contending he had been employed by the District and was therefore eligible for such benefits. CalPERS determined that Bennett had provided services as a common law employee of the District and the District appealed from that determination. The District's appeal resulted in a hearing before an administrative law judge who received oral and documentary evidence and briefing from the parties. The administrative law judge issued a decision setting forth the applicable standard and burden of proof in determining the employment issue as follows: "Absent statutory or case law establishing a different standard, the standard of proof is 'a preponderance of the evidence.' [Citation.] In this proceeding, [the District] had the burden of demonstrating by a preponderance of the evidence that Mr. Bennett was an independent contractor rather than an employee during the time period in question."

In the decision, the administrative law judge observed that "[e]xtensive evidence" had been presented describing in detail the relationship between Bennett and the District, stating: "Some of the factors weigh towards an employee relationship and some against it. At least in the 2010 and 2011 contracts, [the District] and Strange PC [Bennett's company] identified Strange PC as an independent contractor. As to the issue of control, the evidence was inconclusive. The control issue focuses on the employer's 'authority to exercise complete control, whether or not that right is exercised.' While [the District's] management asserted that it did not exercise control over Mr. Bennett's work, there was some evidence that it had authority to exercise control. Further, the evidence did not support a finding that Mr. Bennett had the complete ability to control the manner

_____

[2] The Unemployment Insurance Appeals Board held Bennett "is not an employee of the putative employer under [Government C]ode sections 621 and 926. The claimant is ineligible for unemployment benefits under [Labor C]ode section 1253(a)."

6

or means of providing the services he was contracted to perform. . . . As to this issue, [the District] did not meet its burden by a preponderance of the evidence."

The administrative law judge ultimately concluded: "Upon consideration of all relevant factors, and despite the fact that [the District] and Mr. Bennett signed contracts on two occasions that stated Strange PC was an independent contractor, [the District] did not satisfy its burden of proving by a preponderance of the evidence that Mr. Bennett was an independent contractor."[3] The decision stated that the District's appeal from the prior CalPERS decision was therefore denied because Bennett had been the District's employee and was therefore eligible for membership in CalPERS from July 1, 2010 through August 28, 2012. The District was ordered to pay all arrears costs for member contributions for that time period and a $500 administrative cost.

## IV.
### BEFORE THE LIABILITY PHASE OF TRIAL IN THE SECTION 1102.5(B) ACTION, THE TRIAL COURT GRANTS BENNETT'S MOTION IN LIMINE FOR AN ORDER EXCLUDING EVIDENCE ON THE EMPLOYMENT ISSUE BASED ON THE DOCTRINE OF COLLATERAL ESTOPPEL.

Bennett filed a motion in limine (motion in limine No. 1) in which he sought an order that would exclude the admission of evidence showing that Bennett was anything other than the District's common law employee. Motion in limine No. 1 sought to preclude the District "from introducing any evidence which establishes, tends to establish, suggests, or tends to suggest, that Plaintiff was not a common law employee of

---

[3] The administrative law judge rejected the District's argument that collateral estoppel applied as to the Unemployment Insurance Appeals Board's determination that Bennett was not the District's employee because "[t]he relationship between EDD/UIAB and CalPERS is not sufficiently close to justify estopping CalPERS from litigating the issue of whether, for CalPERS membership purposes, Mr. Bennett is a common law employee." In any event, Unemployment Insurance Code section 1960 provides that "[a]ny finding of fact or law, judgment, conclusion, or final order" made by an administrative law judge "shall not be conclusive or binding in any separate or subsequent action or proceeding, and shall not be used as evidence in any separate or subsequent action or proceeding, between an individual and his or her present or prior employer brought before an arbitrator, court, or judge of this state."

Defendant." It stated it was "brought on the grounds that the issue of whether or not Plaintiff was properly or improperly classified as an independent contractor has already been ruled on in an administrative decision that may be used for its preclusive effect under the doctrine of collateral estoppel. Thus, any attempt to introduce such evidence would be highly prejudicial, would most certainly mislead the jury to confuse the issues, and most importantly, would necessitate undue consumption of the [c]ourt's time."

The trial court's minute order did not record the court's ruling on motion in limine No. 1 but instead states: "Court's ruling given as stated on the record." The reporter's transcript from the hearing on the motion contains a lengthy discussion between the trial court and counsel regarding the parties' respective motions in limine, including Bennett's motion in limine No. 1. It is clear the court concluded that the administrative law judge's finding in the CalPERS proceeding that Bennett had been the District's employee was controlling in the section 1102.5(b) action and that the District was collaterally estopped from challenging that finding at trial. The court also ruled, however, that evidence regarding Bennett's employment status would be admitted for limited purposes including whether Bennett reasonably believed the District was violating the law.

V.

THE JURY IS INSTRUCTED WITH A VERSION OF CACI NO. 4603 MODIFIED TO DELETE THE EMPLOYMENT RELATIONSHIP ELEMENT OF A SECTION 1102.5(B) CLAIM; THE JURY RETURNS A SPECIAL VERDICT FINDING THE DISTRICT LIABLE ON THAT CLAIM.

During the liability phase of trial, the jury was instructed on the elements of a section 1102.5(b) claim with CACI No. 4603. That instruction was modified by the trial court to eliminate the first element contained in the standard instruction that would have required the jury to initially find whether the defendant had been the plaintiff's

8

employer.[4] During deliberations, the jury submitted the following question to the court: "Do we need to understand the employment law that distinguishes an employee from a contractor (state or federal) [¶] — Can we see it?" The court responded: "Please refer to Instruction 4603."

The jury thereafter returned the following special verdict as reported in the trial court's minute order:[5]

"1) Did [the District] believe that [Bennett] disclosed to [the District] that [the District] had engaged in unlawful business practices by misclassifying [Bennett] as an independent contractor when he should have been an employee.

"Answer: Yes. [¶] . . . [¶]

"2) Did [Bennett] have reasonable cause to believe that the information he reported disclosed a violation of a state and/or [federal] statu[t]e and/or noncompliance with a state and/or federal rule or regulation?

"Answer: Yes. [¶] . . . [¶]

"3) Did [the District] discharge [Bennett] or terminate STRANGE PC?

---

[4] The standard version of former CACI No. 2730 (now CACI No. 4603) similarly required the jury to make a finding as to whether Bennett was employed by the District as an element of the claim for a violation of section 1102.5(b). The modified version of CACI No. 4603 given to the jury in this case omitted the initial element that an employment relationship existed between the parties, instead stating in part: "SHAWN BENNETT claims that RANCHO CALIFORNIA WATER DISTRICT discharged SHAWN BENNETT or terminated STRANGE PC's contract in retaliation for his disclosure of information of an unlawful act or practice of RANCHO CALIFORNIA WATER DISTRICT. In order to establish this claim, SHAWN BENNETT must prove all of the following: [¶] 1. That RANCHO CALIFORNIA WATER DISTRICT believed that SHAWN BENNETT disclosed to the RANCHO CALIFORNIA WATER DISTRICT that the RANCHO CALIFORNIA WATER DISTRICT had engaged in unlawful business practices by misclassifying SHAWN BENNETT as an independent contractor when he should have been classified as an employee."

[5] The jury's special verdict form appears to have been based on the standard CACI No. VF-4602, modified to eliminate the first question contained in the standard form: "1. Was [*name of defendant*] [*name of plaintiff*]'s employer?"

9

"Answer: Yes. [¶] . . . [¶]

"4) Was [Bennett's] disclosure of information a contributing factor in [the District's] decision to discharge [Bennett] or terminate STRANGE PC's contract?

"Answer: Yes. [¶] . . . [¶]

"5) Would [the District] have discharged [Bennett] or terminated STRANGE PC's contract anyway at that time, for legitimate, independent reasons?

"Answer: No."

During the damages phase of trial, after further evidence was admitted on the issue of damages, the jury returned its verdict awarding Bennett damages in a total amount of $794,000 for past and future economic loss.

The District filed a motion for new trial on several grounds, including that the trial court's application of collateral estoppel on the employment issue constituted legal error. The District also filed a JNOV motion on the grounds the evidence presented at trial established Bennett was not an employee of the District for purposes of section 1102.5(b) liability and Bennett did not make any disclosures protected by section 1102.5(b).

The trial court denied both motions. Final judgment was entered, awarding Bennett $794,000 in damages and $29,637.18 in costs, for a total judgment against the District in the amount of $823,637.18. The District appealed from the judgment and the postjudgment order denying the JNOV motion.

JUDICIAL NOTICE

The District filed a motion for judicial notice requesting that this court take judicial notice of portions of the legislative history of section 1102.5. Bennett has not filed opposition to the request. The District's request is granted. (See Evid. Code, §§ 452, subd. (c), 459, subd. (a); *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 279, fn. 9 ["[t]he legislative history in this case is . . . limited to various

10

versions of the legislation and committee reports, all of which are indisputably proper subjects of judicial notice"]; *Mooney v. County of Orange* (2013) 212 Cal.App.4th 865, 872.)

## DISCUSSION

### I.

#### THE TRIAL COURT ERRED BY DETERMINING THE DOCTRINE OF COLLATERAL ESTOPPEL APPLIED TO ESTABLISH BENNETT WAS THE DISTRICT'S EMPLOYEE WITHIN THE MEANING OF SECTION 1102.5(B).

#### A.

*The Doctrine of Collateral Estoppel Does Not Apply When a Party Obtains a Favorable Finding Based on a Lesser Burden of Proof in a Prior Proceeding than the Party Would Bear in the Subsequent Proceeding.*

The doctrine of collateral estoppel "prohibits the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." (*Id.* at p. 825.) A party who asserts collateral estoppel as a bar to further litigation bears the burden of proving that the requirements of the doctrine have been satisfied. (*Hong Sang Market, Inc. v. Peng* (2018) 20 Cal.App.5th 474, 489.)

Whether an issue is "identical" to a previously adjudicated issue for purposes of collateral estoppel depends on the burden and standard of proof applicable in each proceeding or action in relation to the party who obtained a favorable finding in the prior action and who then invokes collateral estoppel in the subsequent proceeding with regard to that finding. In *The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494, 1503, the appellate court stated: "[C]ollateral estoppel does not apply when the factual finding in the prior proceeding was arrived at based on a lower standard

11

of proof than the one required in the subsequent proceeding." (See *People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1463 ["collateral estoppel does not apply where the two proceedings at issue have different burdens of proof [citations] or where the burden of proof falls on a different party in each proceeding"].)

In *Holt v. Department of Food & Agriculture* (1985) 171 Cal.App.3d 427, 433, the appellate court rejected the argument that an administrative proceeding was barred by application of collateral estoppel following an acquittal in a prior criminal proceeding. The court explained: "In a criminal case the burden of proof is higher and different and consequently the issue decided in the criminal proceeding is not identical to the one to be litigated in the subsequent administrative hearing." (*Ibid.*) That different burdens apply in different proceedings, however, is not dispositive in determining whether collateral estoppel applies: "[A]n administrative adjudication may be given collateral estoppel effect in a subsequent criminal action, even though the standards of proof remain different . . . because if the administrative agency 'fails to prove its allegations by a preponderance of the evidence at the [administrative] hearing, it follows a fortiori that it has not satisfied the beyond a reasonable doubt standard.'" (*Ibid.*) The court concluded in the administrative proceeding following an acquittal in a criminal proceeding: "Since the converse is not true, the doctrine of res judicata does not apply." (*Ibid.*; see *Younan v. Caruso* (1996) 51 Cal.App.4th 401, 409-410, fn. 4 ["[c]ollateral estoppel will not ordinarily apply if the party sought to be bound by a previous factual determination faced a higher burden of proof in the first proceeding than is required by the current proceeding"].)

These legal principles were applied in *Wimsatt v. Beverly Hills Weight etc. Internat., Inc.* (1995) 32 Cal.App.4th 1511, 1523 (*Wimsatt*), in which a panel of this court reversed the trial court's determination that collateral estoppel precluded the plaintiffs from challenging a forum selection clause in state court after a federal court had previously rejected the plaintiffs' challenge to that clause. The court stated: "[T]he

12

difference in burdens is dispositive here. The earlier litigation in federal court in San Diego imposed a heavy burden on the plaintiffs to show that they would be without a 'day in court' to escape the forum selection clause. As related above, the logic of the antiwaiver provision of California's Franchise Investment law requires that the burden be on the defendant to show that litigation in the contract forum will not diminish any of the plaintiffs' rights under California law." (*Id.* at p. 1524.)

The *Wimsatt* court relied on *In re Nathanial P.* (1989) 211 Cal.App.3d 660, 670, 672, noting in that case, the appellate court "squarely held that collateral estoppel effect should not have been given the earlier findings because they were made using a different standard of proof than required for the later hearing. At the jurisdictional hearing the standard was tougher against the father: the state had to show by only a preponderance of the evidence he had abused his children. At the termination hearing the state was required to show by clear and convincing evidence he had abused them. The difference in burdens was dispositive even though the same factual question was involved." (*Wimsatt, supra*, 32 Cal.App.4th at pp. 1523-1524, italics omitted.)

The *Wimsatt* court held: "We reverse because the issue litigated in the federal proceeding is not identical to the one presented by this case. The federal court's ruling was a matter of federal procedural law, in which there is indeed a heavy burden of proof on the party opposing the enforcement of a forum selection provision. This action, by contrast, turns on state substantive law in which the burden is on franchisors to show that enforcement of a forum selection clause will not subvert substantive rights afforded California citizens. Different sovereignties, different rules, different burdens: no collateral estoppel." (*Wimsatt, supra,* 32 Cal.App.4th at p. 1514.)

13

*In Order to Prevail on His Section 1102.5(b) Claim, Bennett Has the Burden of Proving He Was the District's Employee.*

Bennett's sole claim in the section 1102.5(b) action is based on his allegation the District violated section 1102.5(b), the version of which that was in effect during his employment provided: "An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation."

In order to prove a claim under section 1102.5(b), the plaintiff must establish a prima facie case of retaliation. (*Mokler v. County of Orange* (2007) 157 Cal.App.4th 121, 138.) It is well-established that such a prima facie case includes proof of the plaintiff's employment status. In *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at pages 287 to 288, the California Supreme Court explained: "'"'To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse *employment* action by her *employer*, and there was a causal link between the two.'"' [Citation.] [¶] Thus, it appears *that a prerequisite to asserting a violation of Labor Code section 1102.5 is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred*." (Italics added; see *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537, 1546 ["a prerequisite to asserting a Labor Code section 1102.5 violation is the existence of an employer-employee relationship at the time the allegedly retaliatory action occurred"]; *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 [prima facie case of retaliation in violation of section 1102.5 requires showing by the plaintiff his or her employer subjected the plaintiff to an adverse employment action].)

The principle that the plaintiff has the burden of proving his or her employment status in a section 1102.5(b) action is reiterated in CACI No. 4603, the standard jury instruction defining the essential elements for a section 1102.5(b) claim. CACI No. 4603 begins: "[*Name of plaintiff*] claims that [*name of defendant*] [discharged/[*other adverse employment action*]] [him/her] in retaliation for [his/her] [disclosure of information of/refusal to participate in] an unlawful act. In order to establish this claim, [*name of plaintiff*] must prove all of the following: [¶] 1. That [*name of defendant*] was [*name of plaintiff*]'s employer."

Therefore, in this section 1102.5(b) action, Bennett has the burden of proving he was the District's employee in order to prevail on his claim.

C.

*The Trial Court Erred by Concluding the District Was Collaterally Estopped From Challenging Bennett's Employment Status.*

In ruling on Bennett's motion in limine No. 1, the trial court concluded the doctrine of collateral estoppel applied to the administrative law judge's finding in the CalPERS proceeding that Bennett was the District's employee. The court's ruling was in error because in the prior proceeding, the District had the burden of proving Bennett had been its independent contractor in order to avoid liability with regard to Bennett's claim for retirement benefits. The administrative law judge concluded the District failed to carry its burden and therefore found Bennett had been the District's employee. As discussed *ante*, in the section 1102.5(b) action it is Bennett's burden to prove his employment status with the District. Bennett's burden of proof was necessarily heavier as to that issue in the section 1102.5(b) action; indeed, he did not have any burden of proof as to employment status in the CalPERS proceeding. Therefore, the employment status issue resolved in the CalPERS proceeding was not identical to the employment

15

status issue presented in the section 1102.5(b) action and thus collateral estoppel doctrine did not apply.[6]

The prejudice resulting from the trial court's error is evident. The administrative law judge in the CalPERS decision noted the existence of evidence on both sides of the issue. The administrative law judge's decision came down to which party had the burden of proof. Here, the trial court ordered that evidence regarding Bennett's employment status be excluded at trial except for limited purposes to prove Bennett's reasonable belief. The trial court removed the issue of employment status from the jury's consideration by modifying CACI No. 4603 and the special verdict form to delete the language asking the jury to decide whether Bennett was employed by the District. The jury itself questioned whether it should be considering Bennett's employment status, but was referred to the modified version of CACI No. 4603, which did not ask the jury to make that determination. The jury ultimately found in favor of Bennett.

Because collateral estoppel did not apply, the parties should have been allowed to present evidence on the issue of Bennett's employment status and the jury should have been instructed to make a finding on that issue. We therefore remand with directions to hold a new trial.

---

[6] We note that in the CalPERS proceeding, the administrative law judge applied a rebuttable presumption of employment status; that presumption does not apply in a section 1102.5(b) action. That Bennett enjoyed the presumption of employment status in the CalPERS proceeding, which resulted in the employment finding that was favorable to him, further supports our conclusion that the employment issue adjudicated in the CalPERS proceeding was not identical to the one presented in the section 1102.5(b) action for purposes of collateral estoppel.

16

## II.

### THE TRIAL COURT DID NOT ERR BY DENYING THE DISTRICT'S JNOV MOTION AND REJECTING THE DISTRICT'S ARGUMENT A STATUTORY DEFINITION OF "EMPLOYEE" APPLIED TO THE SECTION 1102.5(B) CLAIM.

The District argues the trial court erred by failing to grant its JNOV motion on the ground insufficient evidence supported the finding Bennett was its employee. The District argues the trial court erroneously acquiesced to the administrative law judge's adoption of the common law definition of employee instead of applying a statutory definition of employment. As for the statutory definition, the District asserts "[f]or public entities, the test for an 'employee' under section 1102.5 is whether the plaintiff obtained a duly authorized employee position in compliance with the entity's applicable statutory and regulatory procedures." The District would have been entitled to a directed verdict had a statutory definition of employee been applied, it further argues, because Bennett would be unable to prove he came within the statutory definition. The District's argument fails because the common law definition of employee applies to section 1102.5(b) claims.

The District's argument the statutory definition and not the common law definition of employee applies is rooted in the Supreme Court's analysis in *Metropolitan Water Dist. v. Superior Court* (2004) 32 Cal.4th 491, 500 (*Metropolitan*) in which the defendant public agency (a water district) contracted with CalPERS to provide retirement benefits to its employees. The defendant had employed "many employees under a merit system set forth in its administrative code, which establishes procedures for the selection of employees and provides those employees with various benefits." (*Id.* at p. 497.) Those employees hired by defendant through its established procedures were provided CalPERS retirement benefits. (*Ibid.*) The defendant also entered into contracts with private labor suppliers to provide the defendant with workers who the defendant classified as "consultants" or "agency temporary employees." (*Ibid.*) The defendant did

not enroll those workers in CalPERS retirement plans or provide them with the benefits provided to its employees under its administrative code. (*Ibid.*)

The issue before the Supreme Court was whether the defendant was required to enroll in CalPERS those workers provided and paid by the private labor suppliers and who were not hired according to the defendant's procedures under its administrative code. (*Metropolitan, supra,* 32 Cal.4th at p. 497.) The Supreme Court stated: "Our question, then, is what the [Public Employees Retirement Law (PERL) (Gov. Code, § 20000 et seq.)] means by 'employee.'" (*Id.* at p. 500.) The Supreme Court answered this question: "As to contracting agencies, the PERL gives the term no special meaning, stating simply that 'employee' means '[a]ny person in the employ of any contracting agency.' ([Gov. Code] § 20028, subd. (b).) In this circumstance—a statute referring to employees without defining the term—courts have generally applied the common law test of employment. "'[W]here Congress uses terms that have accumulated settled meaning under . . . the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." [Citations.] In the past, when Congress has used the term "employee" without defining it, we have concluded that Congress intended to describe the conventional master-servant relationship as understood by common-law agency doctrine.' [Citations.] California courts have applied this interpretive rule to various statutes dealing with public and private employment. The federal courts have applied it specifically to the question of qualification for retirement benefits. Unless given reason to conclude the Legislature must have intended the term to have a different meaning in [Government Code] section 20028, subdivision (b), we also can only adhere to the common law test." (*Id.* at pp. 500-501, fns. & italics omitted.)

The Supreme Court concluded: "[T]he PERL's provision concerning employment by a contracting agency ([Gov. Code] § 20028, subd. (b)) incorporates a common law test for employment, and that nothing elsewhere in the PERL, in [the

18

defendant]'s administrative code, or in statutes and regulations addressing joint employment in other contexts supports reading into the PERL an exception to mandatory enrollment for employees hired through private labor suppliers." (*Metropolitan, supra,* 32 Cal.4th at p. 509.)

In its opening brief, the District argues: "The District's Administrative Code, a legislative enactment, states that the Board will set the District's annual budget after presentation at a public noticed hearing, and then new hires must be authorized by the appropriate department manager, the Human Resources Department, and the General Manager. . . . The District's Employee Policy & Procedural Manual, promulgated by the Board under Government Code section 61040, subdivision (a), states that the Board retains responsibility to determine the number of positions authorized, as well as the salary and benefits strategy. [Citation.] The manual also sets forth a specific procedure for hiring employees, which includes posting the opening publicly, accepting applications, interviewing candidates, and selecting the most qualified person." The District further argues: "It is undisputed here that the Board exercised its legislative authority under the Water Code to reject the request to authorize a new employee position that would replace Strange PC's contract. [Citations.] It is also undisputed that Bennett never underwent any of the steps necessary to become an employee under the applicable regulations."

The District contends section 1106's "definition" of employee demonstrates a legislative intent to reject the common law definition of employee for purposes of section 1102.5(b) claims and instead limit that definition in the context of such claims to employees who have been duly hired pursuant to the District's Administrative Code and Employee Policy & Procedure Manual. Section 1106, however, does *not* say that, but instead provides: "For purposes of Sections 1102.5 . . . 'employee' includes, but is not limited to, any individual employed by the state or any subdivision thereof, any county, city, city and county, including any charter city or county, and any school district,

19

community college district, municipal or public corporation, political subdivision, or the University of California."

A plain reading of sections 1102.5 and 1106 shows neither statute suggests the term "employee" in section 1102.5 be assigned a "special meaning." (*Metropolitan, supra,* 32 Cal.4th at p. 500.) The District apparently reads into the phrase "employed by" various public entities in section 1106 as limiting the standing of public employees to pursue a section 1102.5(b) claim to those who have been hired in accordance with the administrative code and manual. The term "employed by" is indistinguishable from language contained in portions of the PERL held by the Supreme Court in *Metropolitan* to incorporate the common law definition of employee, including but not limited to Government Code section 20281 providing that CalPERS members include "'all employees of a contracting agency.'" (*Id.* at p. 499.) The Supreme Court did not express concern that the application of the common law definition of employee to a section 1102.5(b) claim brought against a public entity might infringe on its sovereign powers to decide whom it shall employ. The defendant in that case was a public water district like the District in the instant case. The District's argument, recast—there is no such thing as a common law employee plaintiff who may sue its public employer for a violation of section 1102.5(b)—is directly undermined by *Metropolitan* itself.

The District cites *Holmgren v. County of Los Angeles* (2008) 159 Cal.App.4th 593, 605 (*Holmgren*) to show that the term "employed by" is not the same as the term "employees of" because the former "means employed pursuant to the public entity's statutes and regulations." *Holmgren* does not support the District's argument.

*Holmgren* is distinguishable because it involved the definition of the term "employee" under a different statute, which itself had a definition of employee. The *Holmgren* court stated: "In [*Metropolitan*], the statute stated only that an 'employee' was "'[a]ny person in the employ of any contracting agency." [Citation.] In our case, by contrast, [Government Code] section 31469, subdivision (a), and Los Angeles County

20

Code section 5.20.010 [each] quite clearly and unequivocally define a CERL-eligible employee as *a person employed by the county whose compensation is 'fixed by the Board of Supervisors' and 'paid by the County*.'" (*Holmgren, supra,* 159 Cal.App.4th at p. 605, fn. omitted, italics in original.) The court noted the county's civil services rules were consistent with that statute and county code section. (*Ibid*.) The *Holmgren* concluded on this point: "It follows ineluctably that this is *not* a case in which the statute refers to employees without defining the term, that eligibility for CERL benefits is entirely dependent on the statutory definition, and that the common law doctrine does not apply in this context." (*Ibid.*) Notably in *Holmgren*, the statute at issue itself contained a definition of employee that went beyond simply referring to persons employed by or in the employ of a public entity. *Holmgren* is inapposite.

*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625 (*Mendoza*), which is also cited by the District, is similarly distinguishable. In *Mendoza*, the plaintiff, a volunteer community service officer, sued for disability discrimination under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). The appellate court concluded that section 7286.5, subdivision (b) of title 2 of the California Code of Regulations, which was part of the set of regulations enacted by the Department of Fair Employment and Housing to implement FEHA itself, provided a workable definition of employee for purposes of entitlement to FEHA protection as including "'[a]ny individual under the direction and control of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written.'" (*Id.* at pp. 632-633.) Because the plaintiff was never appointed as an employee or apprentice by the defendant, and did not otherwise receive any form of compensation to his efforts, he was not an employee under FEHA. (*Id.* at p. 637; see *Estrada v. City of Los Angeles* (2013) 218 Cal.App.4th 143, 148-149 [following *Mendoza* in concluding a city's volunteer police reserve officers were not employees for purposes of FEHA]; but see *Bradley v. Department of Corrections & Rehabilitation* (2008) 158 Cal.App.4th 1612, 1617, 1626 & fn. 2 [distinguishing

21

*Mendoza* on ground the plaintiff was not a volunteer, appellate court held the plaintiff was an employee within the meaning of FEHA "even though she was not an official employee state for civil service and benefit purposes"].)  Neither *Mendoza, supra,* 128 Cal.App.4th 625, nor its progeny addresses the appropriate definition of the term employee under section 1102.5(b).  Unlike the plaintiff in *Mendoza*, Bennett was compensated for the services he provided to the District.

The trial court, therefore, did not err by denying the District's JNOV motion brought on the ground the statutory definition of employee applied.  At the retrial following remand, the common law definition of employee shall be applied for the section 1102.5(b) claim.  We do not intend by our holding to express an opinion regarding the applicable definition of employee in the context of any statute other than section 1102.5(b).

### III.
### THE TRIAL COURT DID NOT ERR BY DENYING THE DISTRICT'S JNOV MOTION BROUGHT ON THE GROUND INSUFFICIENT EVIDENCE SHOWED BENNETT MADE A PROTECTED DISCLOSURE.

The District argues the trial court erred by denying its JNOV motion brought on the ground insufficient evidence showed he made a protected "disclosure" within the meaning of section 1102.5(b).  The District contends Bennett did not make a protected disclosure but only complained about publicly known facts that had been debated and voted on in a public hearing.  The District argues, in the alternative, the trial court erred in instructing the jury as to the disclosure element, warranting a new trial in this matter.

"""A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict.  If there is any substantial evidence, or reasonable inferences to be drawn

22

therefrom, in support of the verdict, the motion should be denied." " (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878.)

As discussed *ante*, the trial court erred in ruling on motion in limine No. 1 by concluding the administrative law judge's prior ruling that Bennett was the District's employee would be given collateral estoppel effect in the section 1102.5(b) action. Thereafter, the court took the issue of employment status away from the jury and ordered that evidence pertaining to Bennett's employment status be excluded from trial. Complicating matters further, the court's minutes do not record the court's ruling on motion in limine No. 1 or otherwise describe the scope of the evidence excluded by the ruling. The transcript from the hearing on motion in limine No. 1 shows the trial court engaged in a wide-ranging discussion of trial issues with the parties' counsel, including issues implicated by motion in limine No. 1. But the transcript does not show the parameters of the court's evidentiary ruling other than to suggest a few carve-outs from the prohibition, including that evidence would be permitted to prove Bennett's reasonable belief.

At a minimum, evidence that would have been relevant to prove Bennett had been the District's employee might have been relevant to prove other elements of the section 1102.5(b) claim, particularly given that the alleged retaliation was based on his alleged reports he had been wrongfully classified as an independent contractor instead of an employee. The trial court's erroneous evidentiary ruling necessarily restricted the parties' respective presentations of evidence at trial. The District, therefore, was not entitled to judgment entered in its behalf notwithstanding the verdict based on the state of the erroneously limited evidence presented at trial. On remand, both parties will have the opportunity to present evidence relevant to every element of Bennett's section 1102.5(b) claim. Because we reverse the judgment and remand for a new trial, we do not reach the District's arguments regarding instructional error on this issue.

23

## DISPOSITION

The judgment is reversed. The order denying the JNOV motion is affirmed. The matter is remanded for a new trial. In the interest of justice, each party shall bear its own costs on appeal.


FYBEL, J.

I CONCUR:


O'LEARY, P. J.

24

**THOMPSON, J.,** Concurring and dissenting.  I respectfully disagree with the majority's conclusion the trial court incorrectly applied the doctrine of collateral estoppel and prohibited the District from relitigating the prior determination that Bennett was an employee.  However, I agree the trial court correctly denied the District's JNOV motion.  Accordingly, I would affirm the judgment and the postjudgment order.

The trial court concluded all the elements of collateral estoppel were satisfied.  I agree.  There was a "final adjudication" of an "identical issue" (Bennett's employee status); that issue was "actually litigated and necessarily decided" in the prior action in favor of Bennett; and he "asserted" it in this action against the District, "a party" to the prior action.  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)

The majority reaches the opposite conclusion, reasoning the identical issue element was not satisfied, because the District had the burden of proving Bennett was not an employee in the prior action, and Bennett had the burden of proving he was an employee in this action.  This is a distinction without a difference, based on the logical fallacy of equivocation—using the term "burden of proof" in more than one sense.

The term burden of proof can be used in the sense of identifying the quantum or standard of proof which is required, such as beyond a reasonable doubt.  The term burden of proof can also be used in the sense of identifying which party bears the burden of going forward to prove the elements of a claim or defense.  While the former sense of the term is relevant in the collateral estoppel context, the latter sense is not.

Collateral estoppel would not apply if the quantum of proof required in the prior action was less than in the subsequent action.  (See, e.g. *The Grubb Co., Inc. v. Department of Real Estate* (2011) 194 Cal.App.4th 1494 [preponderance of the evidence vs. clear and convincing evidence].)  But that was not the case here.  The quantum of proof required in the prior and subsequent actions was the same.  In both actions Bennet's

1

employee status had to be proven or disproven according to the preponderance of the evidence standard. Thus, the issue was identical for collateral estoppel purposes.

*Wimsatt v. Beverly Hills Weight etc. Internat., Inc*. (1995) 32 Cal.App.4th 1511 (*Wimsatt*) does not support the majority's contrary conclusion. There, the court held collateral estoppel did not apply because the issue litigated in the prior federal action, was not identical to the one presented in the subsequent state action. "The federal court's ruling was a matter of federal procedural law, in which there is indeed a heavy burden of proof on the party opposing the enforcement of a forum selection provision. This action, by contrast, turns on state substantive law in which the burden is on franchisors to show that enforcement of a forum selection clause will not subvert substantive rights afforded California citizens. Different sovereignties, different rules, different burdens: no collateral estoppel." (*Id*. at p. 1514.) But here, both actions turn on the same substantive law and quantum of proof. Therefore, collateral estoppel applies.

*Wimsatt* also misapplied the holding of *In re Nathaniel P*. (1989) 211 Cal.App.3d 660 (*Nathaniel P*.). In *Nathaniel P*. the prior action was a hearing in a dependency case which decided whether a father had abused his children. The subsequent action was a hearing in the dependency case which decided whether the father's parental rights should be terminated. The appellate court held the factual findings in the prior hearing should not be given collateral estoppel effect because they were made using a different *standard of proof* than the one required for the later hearing. (*Id*. at pp. 670-672.) Specifically, at the prior hearing the state only had to meet the preponderance of evidence standard, while at the subsequent hearing the state had to meet the clear and convincing evidence standard of proof. (*Id*. at p. 672.) Hence, the quantum of proof, not the party with the burden of going forward on the issues, was dispositive.

*Wimsatt* stated, "the difference in burdens [in *Nathaniel P*.] was dispositive even though the same factual question was involved." (*Wimsatt*, *supra*, 32 Cal.App.4th at p. 1524.) "Likewise the difference in burdens is dispositive here. The earlier

2

litigation . . . imposed a heavy burden on the plaintiffs to show . . . ." (*Ibid*.)  However, the subsequent action required "that the burden be on the defendant to show . . . ." (*Ibid*.)

In this way *Wimsatt's* application of *Nathaniel P.* conflated the quantum of proof in the prior action with the burden of going forward in the subsequent action.  The result was an unwarranted extension of the holding in *Nathaniel P.*

But even if *Wimsatt* was correctly decided, it is not binding on us (*People v. Dimacali* (2019) 32 Cal.App.5th 822, 838) and I would not follow it here.  *Wimsatt* is an outlier.  Following *Wimsatt* here improperly limits the application of collateral estoppel and does needless violence to the bedrock principles of this long-established doctrine.

Finally, strong public policies support the trial court's application of collateral estoppel in this case.  Collateral estoppel is designed "'"""(1) to promote judicial economy by minimizing repetitive litigation; (2) to prevent inconsistent judgments which undermine the integrity of the judicial system; and (3) to provide repose by preventing a person from being harassed by vexatious litigation."'"""" (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 404.)  These policies were all vindicated by the trial court's ruling. Bennet's employee status was fully and fairly litigated in the prior action.  Requiring Bennet to relitigate it in this action would have been repetitive.  It would have demoted judicial economy, risked inconsistent judgments and undermined the integrity of the judicial system, and forced him to incur unnecessary litigation expenses.

The judgment and the postjudgment order should be affirmed.


THOMPSON, J.


3