Filed 5/31/23 Certified for Partial Pub. 6/30/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| WANDA M. BROWN, | B320658 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV30604) |
| v. | |
| CITY OF INGLEWOOD et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre H. Hill, Judge.  Affirmed in part and reversed in part.

Engstrom, Lipscomb & Lack, Walter J. Lack, Richard P. Kinnan and Christopher A. Kanne for Defendants and Appellants.

Miller Barondess, Mira Hashmall and Colin H. Rolfs for Plaintiff and Respondent.

Respondent Wanda Brown has served as the elected treasurer for appellant, the City of Inglewood (the City), since 1987.  Brown sued the City and several members of the Inglewood City Council[1] (the council), alleging that after she reported concerns about financial improprieties, the City and the individual defendants defamed and retaliated against her.  She alleged causes of action for (1) defamation; (2) violation of Labor Code section 1102.5, subdivisions (b) and (c),[2] which prohibit retaliation against an employee based on the employee reporting or refusing to participate in what the employee reasonably believes to be illegal activity by the employer (the section 1102.5 retaliation claim); and (3) intentional infliction of emotional distress (IIED), based both on the alleged retaliation and the alleged defamation.  The City and the individual defendants filed a joint special motion to strike the complaint as a strategic lawsuit against public participation, or SLAPP, under the anti-SLAPP statute (Code Civ. Proc., § 425.16).  The court granted the motion in part, but denied it as to the section 1102.5 retaliation claim and the retaliation-based IIED claim against all defendants.  Defendants appeal, arguing the court incorrectly denied the anti-SLAPP motion as to the retaliation-based claims against the individual defendants.  For reasons we discuss below, we hold that the retaliation-based claims against the individual defendants arise from protected conduct under the anti-SLAPP statute, and that the court should have stricken these claims.

---

[1] Specifically, respondents Mayor James T. Butts, Jr., Alex Padilla, George Dotson, Eloy Morales, and Ralph Franklin (collectively, the individual defendants).

[2] Unless otherwise indicated, all unspecified statutory references are to the Labor Code.

In all other respects, we affirm the court's ruling on the anti-SLAPP motion.

## FACTS AND PROCEEDINGS BELOW

### A.    *Brown's Lawsuit Against Defendants*

In her first amended complaint (the FAC), Brown alleged she had "reported to [individual defendants] that she had discovered facts indicating that [individual defendants] were mishandling the City's finances, including an improper payment of nearly [$100,000] to a City [c]ontractor," and "improperly fail[ing] to accurately report to the public the true financial health of the City."  She alleged that, as a result of her reporting these concerns, defendants took various adverse actions against her, including reducing her duties and authority as treasurer, reducing her salary by 83 percent, taking away her seat at the council meetings, and temporarily locking her and her staff out of their offices.  Brown further alleged that, at a council meeting, one of the individual defendants, Mayor Butts, offered a "defamatory pretextual reason for taking away [Brown's] duties and reducing her salary," namely that she "[did] not know the procedure for handling bad debts, [and that] he had no choice but to reduce her duties and her salary."

### B.    *Defendants' Anti-SLAPP Motion and Related Evidence*

Defendants filed a motion to strike all causes of action in the FAC under the anti-SLAPP statute.  The anti-SLAPP statute is "designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern.  [Citations.]  To that end, the statute authorizes a special motion to strike a claim 'arising from any

3

act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).)" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883–884.) Such acts are referred to in anti-SLAPP parlance as "protected activity." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

"Litigation of an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' [Citation.] Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit." ' [Citation.] If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

Defendants' motion argued the FAC alleged claims arising from conduct that falls into two of the statutorily enumerated categories of protected activity: "any written or oral statement[s] or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(2)), and "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).) Specifically, the motion argued that each of Brown's claims arose from voting and other legislative actions of the individual defendants and statements they made at the council meetings

4

in connection therewith.  Defendants' motion further argued that, for various reasons, Brown could not demonstrate that her claims had minimal merit, including that the claims were barred by government discretionary act immunity, that section 1102.5 does not permit individual liability, and that Brown was neither an "employee" for purposes of section 1102.5, nor had she reported conduct that she reasonably suspected to be illegal, both of which are required under section 1102.5.

1. ***Evidence in support of and opposition to the anti-SLAPP motion***

Defendants primarily supported their anti-SLAPP motion with the following evidence:  (1) excerpts from the City charter and Municipal Code; (2) City ordinances and a City policy adopted by a vote of the individual defendants that, collectively, reduced Brown's salary, investment authority, and duties, as alleged in the FAC; (3) excerpts of transcripts from various council meetings, including excerpts reflecting council votes passing the relevant ordinances and policy;[3] and (4) declarations.

---

[3] At Brown's request, the court took judicial notice of the first two categories of documents listed above, but declined to take judicial notice of the council meeting transcripts.  On appeal, defendants contend this ruling was in error, and Brown raises no argument to the contrary.  We need not resolve this issue, however, because regardless of whether the court erred in partially denying the request for judicial notice, the transcripts were attached to a declaration in support of the motion, and the anti-SLAPP statute expressly requires that, in its anti-SLAPP analysis, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  (Code Civ. Proc., § 425.16, subd. (b)(2).)

Under the City charter, the council is the City's legislative body, and all powers of the City are vested in and exercised by the council, which consists of the mayor and four council members.  The City treasurer is not a member of the council.  Council meetings are open to the public.  The council has the authority to "establish rules and regulations for the conduct of its proceedings" and the mayor is "responsible for maintaining the order and decorum of meetings."  The mayor, council members, clerk, and treasurer are all publicly elected.  The council has the authority to fix the compensation of any City officer except the mayor and council members.

In fall 2022, the council passed two ordinances included in the documents supporting the anti-SLAPP motion.  First, in September 2022, it passed Ordinance No. 20-16 regarding "Assignment of City Duties" that, inter alia, transferred general auditor responsibilities once held by the treasurer to the City clerk, reduced the maximum amount of funds the treasurer was permitted to manage to $50,000, and adopted a revised investment policy.[4]  In October 2022, it passed a second ordinance, "Salary Ordinance for Fiscal Year 2020–2021," which adjusted the salaries of a number of positions, including the treasurer's salary, which it reduced by over 80 percent as compared to the previous year.

Declarations from defendant Mayor Butts and the City's manager, Artie Fields, addressed allegations in the FAC that Butts had denied Brown a seat on the dais during council meetings and that the individual defendants had blocked Brown's access to her office.  Butts's declaration stated that

[4] The defendants also submitted the policy itself in support of the anti-SLAPP motion.

6

the City treasurer "is not a member of the . . . council and so has no standing to sit on the dais during meetings of the . . . council," but that "a previous mayor had decided to let the treasurer have a seat on the dais during meetings, and [Butts] [had initially] continued that practice." (Capitalization omitted.) Butts continued that, in early 2020, Brown "began to disrupt meetings of the . . . council" and in July 2020 Butts "exercised [his] discretion as chair of the council and revoked the privilege of the treasurer to be seated at the dais during meetings of the . . . council." (Capitalization omitted.)

The Fields declaration stated that, in October 2020, "Brown's proximity badge was deactivated because she had failed to present a negative COVID-19 test confirmation to the [C]ity, as required" and, as a result, Brown was locked out of her office at City Hall. Fields declared "[t]his same action was taken as to all personnel that did not provide a negative test confirmation. . . . Brown's proximity badge was reactivated once she provided a negative test confirmation."

The transcripts from council meetings reflect the votes by the individual defendants adopting the ordinances and policy noted above, Butts's allegedly defamatory statements, and Brown's statements criticizing the council and Butts.

In opposing the defendants' anti-SLAPP motion, Brown submitted, inter alia, a declaration and supporting exhibits in an effort to establish her status as an "employee" for purposes of section 1102.5. Specifically, Brown offered W-2 federal tax forms she had received from the City, which identify her as an "[e]mployee[ ]" and her biweekly pay stub, which identifies various employee benefits such as health benefits and

7

reflects a deduction from her regular earnings for "workers['] comp[ensation]." (Boldface and capitalization omitted.)

## 2. *Court's ruling on anti-SLAPP motion*

The court granted the defendants' anti-SLAPP motion with respect to the defamation claim and the defamation-based portion of the IIED claim. The court denied the motion as to the section 1102.5 retaliation claim and retaliation-based portion of the IIED claim, finding these claims did not arise from "protected activity." The trial court explained, "[T]he individual defendants' conduct in their decision making or voting is not the gravamen of the [retaliation] claim." The trial court concluded that, instead, "the activities upon which the claim rests, which are adverse actions, are the reduction in her salary and duties and being locked out of her office and computer."

Defendants timely appealed the court's partial denial of their anti-SLAPP motion.

## C. *Additional Procedural History*

Defendants also filed a demurrer to the FAC, which the court heard on the same day as the anti-SLAPP motion. The trial court sustained defendants' demurrer with leave to amend as to the claims that remained in litigation following the court's anti-SLAPP ruling (section 1102.5 retaliation claim and retaliation-based IIED claim). In so ruling, the court concluded that the FAC did not sufficiently allege that Brown had "disclosed to a person with authority over her or to an employee with authority to investigate a concern that certain illegal activity had occurred, and that she had a reasonable belief that Mayor Butts[ ] violated [the] law," a necessary element of Brown's section 1102.5 claim. The court further concluded that the remaining retaliation-based

8

IIED claim was derivative of the retaliation claim and failed for similar reasons, in addition to being barred because the Workers' Compensation Act (§ 3200 et seq.) provides the exclusive remedy for any such injury.[5] (See § 3601, subd. (a) [workers' compensation is "the exclusive remedy for injury or death of an employee against any other employee of the employer acting within the scope of his or her employment"].)

Following the demurrer ruling, Brown voluntarily dismissed (without prejudice) defendants Dotson, Padilla, Franklin, and Morales and filed a second amended complaint asserting her claims under section 1102.5 and for retaliation-based IIED against the City and Butts.

## DISCUSSION

Defendants argue that the trial court reversibly erred in denying their anti-SLAPP motion as to the retaliation-based causes of action against the individual defendants. Our review is de novo. (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056.)

### A. *Anti-SLAPP Analytical Framework*

In the first step in the anti-SLAPP analysis, the moving defendant bears the burden of "identify[ing] what acts each

---

[5] The court also addressed arguments, likewise raised on appeal in connection with the second prong of the anti-SLAPP analysis, that the retaliation-based claims were barred by discretionary act immunity under Government Code section 820.2 and government act immunity under Government Code section 821. Finally, the court noted that the case law was unclear as to whether section 1102.5 provided a basis for imposing liability on an individual, nonemployer defendant.

challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni, supra*, 11 Cal.5th at p. 1009.) If the court determines that relief is sought "based on allegations arising from activity protected by the statute, the second step is reached" (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*)), and "the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated." (*Ibid*.) This step involves a "summary-judgment-like procedure." (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 192.) If the plaintiff fails to make the requisite showing to support the claim, "the claim is stricken." (*Baral, supra*, at p. 396.)

### B. *The Retaliation-Based Claims Against the Individual Defendants Arise from Protected Activity (Anti-SLAPP Analysis Step One)*

#### 1. *Identifying protected activity*

We agree that the individual defendants' votes adopting two ordinances and a policy that, collectively, required the allegedly retaliatory reduction in Brown's salary, authority and duties, are protected activity. The California Supreme Court held in *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409 that, because "votes taken after a public hearing qualify as acts in furtherance of constitutionally protected activity" (*id.* at p. 427, italics omitted), "*elected officials* may assert the protection of [the anti-SLAPP statute] when sued over how they voted." (*Ibid.*, italics added; *id.* at pp. 422–423 [in lawsuit against individual council members, "the council members' votes, as well as statements made in the course of their deliberations at the city council meeting where the votes were taken, qualify as 'any

10

written or oral statement or writing made before a legislative . . . proceeding.'  (§ 425.16, subd. (e)(1).)"].)  Brown, however, argues that we should recharacterize this activity as the individual defendants effectively reducing her salary, authorities and duties.  But the individual defendants have no legal ability to change the scope of Brown's salary, authority, or duties; they can only vote on ordinances and policies on these topics.  After the council passes an ordinance or adopts a policy, the acts implementing the ordinance or policy—for example, actually paying the treasurer less or permitting her to invest less money— are acts of the City, not of the individual council members.  Thus, under *Vasquez*, the individual defendants' involvement in the reduction of Brown's salary, authority, and duties consisted solely of the protected act of voting at council meetings.

The case on which Brown primarily relies in arguing to the contrary, *Whitehall v. County of San Bernardino* (2017) 17 Cal.App.5th 352 (*Whitehall*), is inapposite, because it addresses an anti-SLAPP motion to strike claims against a public entity, not claims against individual public officials.  In *Whitehall,* the court concluded that a retaliation claim against *the County* based on *the County*'s allegedly retaliatory act of placing an employee on leave did not arise from protected activity, even though the County supervisor's investigation that preceded the leave was protected activity.  (*Id.* at p. 362.)  The court in *Whitehall* explained that the "act of placing plaintiff on administrative leave, with the intention of firing her, did not arise from *the County*'s protected activity. . . . Had plaintiff sued the specific supervisors who conducted the investigation on behalf of the County, a clear case of a SLAPP suit would have been established.  But plaintiff challenged the retaliatory

11

employment decision, not the process that led up to that point. *The County*'s act of placing plaintiff on administrative leave, with the intention of terminating her employment, was not an exercise of its petitioning or free speech rights." (*Ibid.*, italics added.) Because the only portion of the anti-SLAPP ruling at issue on appeal involves claims against the individual defendants, not the City, *Whitehall* is of no assistance to Brown.

Thus, the individual defendants' role in reducing Brown's salary and job duties was protected activity.

### 2. *"Arising from" analysis*

We further conclude that the retaliation-based claims against the individual defendants arise from the individual defendants' protected voting activity, as opposed to that activity "merely provid[ing] context" for those claims. (*Baral, supra,* 1 Cal.5th at p. 394.) To determine whether a claim arises from protected activity, we consider whether the protected activity is necessary to satisfy any of the elements of the claim. (*Park, supra,* 2 Cal.5th at p. 1063.) One element of Brown's section 1102.5 claim is that defendants took an " ' "adverse employment action" ' " against her as retaliation for her reporting concerns about financial improprieties. (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 69 [reciting elements of section 1102.5 claim]; see § 1102.5, subds. (b) & (c).) Brown alleges that the same allegedly retaliatory adverse actions also satisfy the " ' "extreme and outrageous conduct" ' " element of her IIED claim. (*Unterberger v. Red Bull North America, Inc.* (2008) 162 Cal.App.4th 414, 423 (*Unterberger*).) Through the retaliation-based claims against the individual defendants, Brown alleges such adverse action and extreme and outrageous conduct primarily consisted of the City's reduction in her salary,

12

duties, and authority, something the individual defendants only engaged in via protected voting activity.

Brown also alleges the individual defendants engaged in retaliatory adverse actions and "extreme and outrageous conduct" by removing Brown from the dais at council meetings, such that even if the individual defendants' voting conduct is protected activity, she need not rely on it to satisfy these elements of her claims.   But removal from the dais cannot alone satisfy these elements of Brown's claims, because it is not sufficiently material (see *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1036 [defining an adverse employment action for purposes of a retaliation claim under the California Fair Employment and Housing Act (the FEHA) as requiring that the adverse action "materially affect[ ] the terms and conditions of employment"]),[6] and it is not an action " ' "so extreme as to exceed all bounds of that usually tolerated in a civilized community." ' " (*Unterberger, supra*, 162 Cal.App.4th at p. 423.)  Thus, Brown must rely on the protected voting activity of the individual defendants discussed above to satisfy these elements of her retaliation-based claims against the individual defendants, meaning the claims arise

_____

        [6] Although this definition was developed in the context of FEHA retaliation, courts apply it in the context of section 1102.5 claims as well.  (See *Malais v. Los Angeles City Fire Dept.* (2007) 150 Cal.App.4th 350, 357 [applying FEHA definition of adverse employment action to a section 1102.5 claim, and noting that "[m]inor or relatively trivial adverse actions . . . that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee . . . are not actionable"].)

from protected activity.**7** (*Park, supra,* 2 Cal.5th at p. 1063.) Accordingly, we analyze these claims under the second step of the anti-SLAPP framework.

### C. *Legal Sufficiency of Retaliation-Based Claims Against Individual Defendants (Anti-SLAPP Analysis Step Two)*

In the second step of the anti-SLAPP analysis, we consider whether Brown has " ' " 'demonstrate[d] that [the retaliation-based claims against the individual defendants] [are] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " ' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 791.)

#### 1. *Section 1102.5 retaliation claim against individual defendants*

Defendants argue that the section 1102.5 retaliation claim is not legally sufficient, because Brown is not an "employee" for the purposes of that statute. We agree.

Brown alleges the individual defendants violated subdivisions (b) and (c) of section 1102.5. By their own terms, these sections protect only "employee[s]" from certain types of retaliation by "[a]n employer, or any person acting on behalf of the employer." (§ 1102.5, subds. (b) & (c).) Section 1106 addresses the definition of the term "employee" in this context: "For purposes of Section[ ] 1102.5 [and other enumerated

---

**7** Because the removal of Brown from the dais was not sufficiently material, we need not and do not consider whether, as defendants argue, removing Brown from the dais was protected activity as well.

sections] 'employee' includes, but is not limited to, any individual employed by . . . any . . . city." (§ 1106.)  Notably, the Legislature did not reference elected officials as falling within the scope of the term "employee" for the purposes of section 1102.5.  Yet when the Legislature intended to include elected officials within the scope of the term "employee" elsewhere in the code—namely, in defining the term for purposes of workers' compensation—the Legislature expressly defined the term " '[e]mployee' . . . [to] include . . . [¶] . . . [¶] . . . [a]ll elected . . . paid public officers."  (§ 3351, subd. (b) [section of Workers' Compensation Act providing:  " 'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes . . . [¶] . . . [¶] . . . [a]ll elected and appointed paid public officers"].)  The plain language of these statutes thus unambiguously includes "elected officials" in the definition of "employee" for purposes of workers' compensation, but not within the definition of "employee" for purposes of section 1102.5.  Because the plain language of a statute is the best indication of the Legislature's intent (see *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 (*Wilcox*)), this language reflects the Legislature's decision to provide elected officials the benefits of the Workers' Compensation Act, but to deny them the protections of section 1102.5.

Brown argues that "[i]t is reasonable and sensible for California courts to . . . classify elected officials as employees [under section 1102.5]," just as the California Legislature did in the context of workers' compensation and the Internal Revenue Service does for purposes of federal tax law.  (See 26 U.S.C. § 3401(c) [defining "employee" under the Internal Revenue

15

Code to include "an officer, employee, or elected official"].)
This argument flies in the face of basic maxims of statutory
interpretation, because it asks us to interlineate section 1106
with words that the Legislature chose *not* to include—words
which, based on section 3351, the Legislature is clearly capable
of employing. (See *Blankenship v. Allstate Ins. Co.* (2010) 186
Cal.App.4th 87, 94 ["the Legislature's omission of a term in a list
of terms indicates the Legislature did not intend to include the
omitted term"].)

Brown also urges us to look to case law defining "employee"
for the purposes of section 1102.5, specifically cases incorporating
the "common law definition of employee" for this purpose.
(*Bennett v. Rancho California Water Dist.* (2019) 35 Cal.App.5th
908, 927.) We need not resort to judicial interpretations of the
definition the Legislature provided when that definition is clear
and unambiguous. (See *Wilcox, supra,* 21 Cal.4th at p. 977
[plain, unambiguous language of a statute is the best indicator
of legislative intent in statutory interpretation].) Accordingly,
Brown's section 1102.5 retaliation claim against the individual
defendants fails the second prong of the anti-SLAPP analysis,
and the court erred in denying the anti-SLAPP motion as to that
claim.

### 2. *Retaliation-based IIED claim against the individual defendants*

Brown's IIED claim against the individual defendants fails
as a matter of law, because it is " 'subsumed under the exclusive
remedy provisions of workers' compensation.' " (*Miklosy v.
Regents of University of California* (2008) 44 Cal.4th 876, 902.)
As noted above, unlike the definition of "employee" for purposes
of section 1102.5, the definition of "employee" for purposes of

16

workers' compensation includes "[a]ll elected . . . paid public officers." (§ 3351, subd. (b).) Where, as here, purportedly wrongful conduct occurred at the worksite in the normal course, "workers' compensation is plaintiffs' exclusive remedy for any injury that may have resulted." (*Miklosy, supra*, at p. 902.) Because we conclude the retaliation-based IIED claim against the individual defendants is not viable on this basis, we need not reach the other bases raised by the parties.

## DISPOSITION

The court's order on defendants' anti-SLAPP motion is reversed to the extent it denies the motion as to Brown's section 1102.5 retaliation claim against the individual defendants and Brown's retaliation-based IIED claim against the individual defendants. In all other respects, the order regarding the anti-SLAPP motion is affirmed.

The parties shall bear their own costs on appeal.

ROTHSCHILD, P. J.

We concur:

BENDIX, J.

WEINGART, J.

18

Filed 6/30/23

# CERTIFIED FOR PARTIAL PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| WANDA M. BROWN,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>CITY OF INGLEWOOD et al.,<br><br>　　　Defendants and Appellants. | B320658<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV30604)<br><br>CERTIFICATION AND<br>ORDER FOR PARTIAL<br>PUBLICATION; ORDER<br>MODIFYING OPINION<br>(NO CHANGE IN JUDGMENT) |

THE COURT:

A.　*Certification and Order For Partial Publication*

The opinion in the above-entitled matter filed on May 31, 2023 was not certified for publication in the Official Reports. For good cause and pursuant to California Rules of Court, rule 8.1110, the opinion is certified for publication with the exception of the Facts and Proceedings Below, part C, and the Discussion, parts B and C.2.

B.      *Order Modifying the Opinion*

The opinion is also modified as follows:

1.      On page 3, the last three sentences of the introductory paragraph are deleted and replaced with the following sentences:

For reasons we discuss below, in the unpublished portion of the opinion, we hold that the retaliation-based claims against the individual defendants arise from protected activity under the anti-SLAPP statute, and that the court should have stricken the retaliation-based IIED claim based on the second step of the anti-SLAPP analysis. In the published portion of the opinion, we conclude the court should have stricken the section 1102.5 retaliation claim as well, because an elected official is not an "employee" for the purposes of that statute. In all other respects, we affirm the court's ruling on the anti-SLAPP motion.

2.      On page 3, in the first paragraph of the Facts and Proceedings Below, part A, the following sentence, "She alleged that, as a result of her reporting these concerns, defendants took various adverse actions against her, including reducing her duties and authority as treasurer, reducing her salary by 83 percent, taking away her seat at the council meetings, and temporarily locking her and her staff out of their offices." is replaced with the following sentence:

She alleged that, as a result of her reporting these concerns, defendants took various adverse actions against her, including reducing her duties and authority as treasurer, reducing her salary by 83 percent, taking away her seat on the dais at council meetings, and temporarily locking her and her staff out of their offices.

2

3.     On page 9, after the citation (*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1056) the following sentence is inserted:

We agree.

4.     On page 14, the paragraph under part C is deleted and replaced with the following paragraph:

Because we conclude above that Brown's retaliation-based claims against the individual defendants arise from protected activity, we proceed to analyze these claims under the second step of the anti-SLAPP analysis.  In this step, we consider whether Brown has " ' " 'demonstrate[d] that [the retaliation-based claims against the individual defendants] [are] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " ' " (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 791.)

5.     In the Disposition on page 18, the words "NOT TO BE PUBLISHED" are replaced with the words TO BE PARTIALLY PUBLISHED.

These modifications do not constitute a change in the judgment.

_____

ROTHSCHILD, P. J.          BENDIX, J.          WEINGART, J.